932 P.2d 354

STATE of Idaho, Plaintiff–Respondent,

v.

Jesus Ismael BUJANDA–VELAZQUEZ, Defendant–Appellant.

No. 22011.

Supreme Court of Idaho,
Twin Falls, Nov. 1996 Term.

Feb. 18, 1997.

John A. Bradley, Burley, for defendant-appellant.

Alan G. Lance, Attorney General; Michael A. Henderson, Deputy Attorney General, Boise, for plaintiff-respondent. Michael A. Henderson, argued.

SILAK, Justice.

This is an appeal from an order denying a motion to dismiss a grand jury indictment and subsequent judgment of conviction and commitment. The motion was based upon various contacts one of the grand jurors allegedly had with the prosecuting attorney and one of the deputy prosecuting attorneys. We affirm.

## I.

### FACTS AND PROCEDURAL BACKGROUND

On August 25, 1994, a grand jury was impaneled in Cassia County. Each of the sixteen prospective grand jurors was questioned by the district judge prior to final selection. In the voir dire process, the court first asked the prospective jurors if they currently had a "business relationship or a personal or social acquaintance" with either of the attorneys in the case, Cassia County Prosecuting Attorney Stephen Bywater (Bywater), or the Deputy Prosecuting Attorney Howard Smyser, or Stephen Tuft, also of their law firm. The judge also asked, "Are any of you presently represented by these attorneys or close personal friends with any of these attorneys?" None of the jurors responded affirmatively. The court then asked if any of the prospective jurors were friends or relatives of attorneys who practice criminal law. One of the prospective jurors disclosed to the court that she knew Alfred Barrus (Barrus) from church and that they were very close friends. The district court acknowledged that Barrus was also a Deputy Prosecuting Attorney for Cassia County and then asked the juror if she could be fair and impartial in light of her relationship with Barrus. The juror responded that she could not and was dismissed. Jerry Hines (Hines) was chosen to be on the grand jury and was selected as the foreman.

The following week the grand jury heard evidence in several cases. One of the cases involved the appellant Jesus Bujanda–Velazquez (Bujanda–Velazquez). An Idaho Bureau of Narcotics agent testified that he had met with Bujanda–Velazquez and a confidential informant at a campground, that Bujanda–Velazquez sold him a pound of marijuana for $1,000, and that Bujanda–Velazquez pulled the package from under the seat of his car and handed it directly to the agent. The grand jury also heard similar testimony from the informant. The jury returned an indictment charging Bujanda–Velazquez with the felonies of delivery of marijuana and failure to affix a tax stamp. Bujanda–Velazquez entered pleas of not guilty and the case was set for jury trial.

Thereafter, Bujanda–Velazquez filed a motion to dismiss the indictment based upon due process violations. Bujanda–Velazquez alleged that his due process rights were violated because grand jury foreman Hines did not disclose that he had had relationships with Bywater and Barrus. At the hearing on the motion, Bujanda–Velazquez attempted to produce the following evidence: that Barrus had many years ago represented Hines and his wife; that Barrus had performed legal services for Century 21, where Hines was a real estate agent; that Hines was involved in both the sale and purchase of the Barrus and Bywater law office; that Hines and Barrus had known each other for many years socially; and that Hines had appraised Barrus' home when he refinanced it. The district court denied the motion, concluding that Bujanda–Velazquez had not been denied due process and that Hines was a proper juror.

Bujanda–Velazquez was later tried by a jury which found him guilty of both counts in the indictment. The district court thereafter entered a judgment of conviction and order of commitment imposing concurrent sentences of four to seven years for delivery of marijuana and one to three years for failure to affix a tax stamp.

On appeal, Bujanda–Velazquez raises the issue of whether the district court erred in concluding that Hines was a proper grand juror and that Bujanda–Velazquez was not deprived of due process by Hines' presence on the grand jury.

## II.

### STANDARD OF REVIEW

■ This Court has held that with respect to petit juries, a decision whether a juror can render a fair and impartial verdict is within the discretion of the trial court and will not be reversed on appeal absent a showing of abuse of discretion. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989). In view of the similar role played by the trial court judge in the supervision of grand juries, we hold that the abuse of discretion standard also applies when we review an appeal from a denial of a motion to dismiss a grand jury indictment. *See, e.g., State v. McDonald*, 872 P.2d 627, 638 (Alaska.Ct.App.1994) (decision to deny motion to dismiss indictment is committed to the trial judge's discretion, and will not be overturned absent abuse of discretion); *State v. Sulgrove*, 19 Wash.App. 860, 578 P.2d 74, 76 (1978) (if there is evidence of arbitrary action or governmental misconduct, reviewing court will not reverse the decision of the trial court to dismiss an indictment absent an abuse of discretion). In determining whether the district court abused its discretion in denying Bujanda–Velazquez' motion to dismiss the grand jury indictment, this Court conducts a multi-tiered inquiry. *Hedger*, 115 Idaho at 600, 768 P.2d at 1333 (1989). First, we must determine "whether the lower court rightly perceived the issue as one of discretion"; second, we determine "whether the court acted within the outer boundaries of such discretion and consistently with any legal

standards applicable to specific choices"; and third, "whether the court reached its decision by an exercise of reason." *Id.*

## III.

### THE DISTRICT COURT PROPERLY EXERCISED ITS DISCRETION IN CONCLUDING THAT HINES WAS A PROPER GRAND JUROR AND THAT BUJANDA–VELAZQUEZ WAS NOT DEPRIVED OF DUE PROCESS BY HINES' PRESENCE ON THE GRAND JURY.

Bujanda–Velazquez argues that he was deprived of due process because Hines, one of the prospective grand jurors on this case, should have disclosed to the district court that he had had professional and personal relationships with the prosecuting attorney, Bywater, and one of the deputy prosecuting attorneys, Barrus. He argues that because of these contacts, Hines, who was also selected to be the jury foreman by the court, could not have been fair and impartial. He claims that the voir dire process in this case was a sham and that he was prejudiced. We disagree.

Under I.C.R. 6.1(c)(3), the grounds for disqualification of a prospective grand juror are those set forth in I.C. § 19–1003. Section 19–1003(7) provides:

**Grounds for challenge to individual jurors.**—A challenge to an individual grand juror may be interposed for one or more of the following causes:

. . .

(7) That a state of mind exists on his part in reference to the case, or to either party, which satisfies the court that he cannot act impartially and without prejudice to the substantial rights of the party challenging.

■ We hold that Bujanda–Velazquez has failed to show any bias on the part of Hines. The fact that Hines did not disclose to the district court during voir dire any relationships he may have had with Barrus and Bywater does not mean that Hines withheld information. There was no showing that Bywater and Hines knew each other or had any

relationship prior to the grand jury proceedings. During voir dire, the district judge asked the prospective jurors if they had a "business relationship or a personal or social acquaintance with either of the attorneys in this case, Mr. Bywater or Mr. Smyser." The judge then asked: "Are any of you presently represented by these attorneys or close friends with any of these attorneys?" Hines' lack of response to these two questions was an accurate depiction of his lack of relationships with Bywater and Smyser. The only complaint Bujanda–Velazquez seems to have with respect to Bywater is that Bywater addressed Hines as "Jerry" during the grand jury proceedings.

Barrus' name did not come up until the judge asked the jurors if any of them were "friends or relatives of attorneys in criminal law practice." One woman stated she was "real close" to Barrus, who was then identified by the judge as a deputy prosecuting attorney. The woman juror attended the same church as Barrus and told the court that she did not think she could be fair and impartial and was therefore excused. The absence of any statement by Hines at this point does not indicate any concealment. The specific question asked by the court was whether any jurors had friends or relatives who practiced criminal law. Barrus later testified that he and Hines were not "good close friends." Thus, Hines did not respond because he had no friends or relatives who practiced criminal law.

Bujanda–Velazquez argues that Barrus had previously provided legal representation to Hines. The record shows that several years prior to this proceeding, Barrus had drawn up a deed for Hines and his wife and that this was the extent of such personal representation.

Bujanda–Velazquez next argues that Barrus had performed legal services for Century 21, where Hines was a real estate agent. The record shows that Barrus had represented Century 21 in the past, but that these matters concerned agents other than Hines.

Bujanda–Velazquez argues that Hines failed to disclose that Hines was involved in both the sale and the purchase of the Barrus and Bywater law office. The record reveals that Barrus and Bywater were law partners from 1978 to 1990. Sometime around 1986 to 1988, Barrus and Bywater purchased a piece of property for approximately $50,000. Hines was the agent for the seller of that property and would have received a commission from the seller. The record also shows that in 1991, after the dissolution of the partnership, Barrus sold the property. Barrus testified that he thought Hines was the listing agent, but that he was not positive.

Bujanda–Velazquez also claims that Hines should have disclosed the fact that he and Barrus were close, personal and social friends. The record does not support this argument. According to the record, Barrus and Hines met approximately fifteen years prior to these proceedings when both were leaders of separate 4–H clubs in which their children were members. During that time, Barrus would see Hines and his wife at meetings once or twice a year and say hello to them. Contrary to Bujanda–Velazquez' assertion that Barrus frequented the Hines' residence, the testimony shows that the only times Barrus ever visited the Hines' home were to pick up the 4–H pig scales of which the Hines' were the custodians.

Finally, Bujanda–Velazquez argues that Hines should have disclosed the fact that Hines appraised Barrus' home. The record on this issue shows that Barrus refinanced his home through Washington Federal and that Washington Federal hired Hines as the appraiser. However, Barrus never discussed the appraisal with Hines nor did Barrus evaluate the appraisal.

In denying Bujanda–Velazquez's motion to dismiss, the district court ruled that use of first names by people in a small town did not characterize them as having a relationship. The court found credible Barrus' characterization of his relationship with Hines as a professional and casual one, and that under the totality of the circumstances, these contacts did not make Hines an improper juror, nor was the formation of the grand jury improper either procedurally or substantively.

Additionally, we note that when interpreting the implied bias statute, I.C. § 19–2020,

this Court has held that a relationship between a juror and one of the attorneys does not necessarily provide a basis for disqualification of the juror. In *State v. Cypher*, 92 Idaho 159, 438 P.2d 904 (1968), the Court upheld the trial court's denial of a challenge for cause of a prospective juror who was, at the time of trial, employed by the prosecuting attorney's firm as a janitor. The Court held that such a proscribed relationship "must be shown to exist between the juror and accused or the person allegedly injured by the offense charged." 92 Idaho at 167, 438 P.2d at 912. In *State v. Major*, 105 Idaho 4, 665 P.2d 703 (1983), the Court, citing *Cypher*, held that a relationship between a prospective juror who was county treasurer and the prosecuting attorney was not that of attorney/client and thus did not suffice to disqualify the juror. 105 Idaho at 7–8, 665 P.2d at 706–07.

In the present case, we hold that the district court properly exercised its discretion according to the *Hedger* standard in denying the motion to dismiss the indictment and in ruling that Hines was a proper grand juror. Hines had no relationship with Bujanda–Velazquez or the prosecuting attorney who presented the case, and apparently had no prior knowledge or opinion of the case itself. Hines' contacts with Barrus were properly viewed by the district court as not creating bias in Hines. Thus, Bujanda–Velazquez has not been denied due process of law under the United States Constitution.

## IV.

### CONCLUSION

We hold that the district court did not abuse its discretion in denying Bujanda–Velazquez' motion to dismiss the grand jury indictment. Accordingly, the judgment of conviction and commitment are affirmed.

JOHNSON, McDEVITT and SCHROEDER, JJ., concur.

TROUT, C.J., concurs in the result.