1 P.3d 795

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Henry William LUKE, Defendant–Appellant.**

No. 24465.

Supreme Court of Idaho.
Coeur d'Alene, October 1999 Term.

April 26, 2000.

John M. Adams, Kootenai County Public Defender, Coeur d'Alene, for appellant. J. Bradford Chapman argued.

Hon. Alan G. Lance, Attorney General, Boise, for respondent. Alison A. Stieglitz argued.

KIDWELL, Justice.

This criminal appeal arises from a judgment of conviction for attempted second degree murder and for burglary. The appellant claims that the jury verdict was the result of errors committed by the prosecutor and the district court. We affirm the conviction for burglary and vacate the conviction for attempted murder.

## I.

### FACTS AND PRIOR PROCEEDINGS

On December 3, 1996, Dorothy Kjera's son-in-law found Kjera in her home severely beaten and covered in blood. A pair of work gloves were found in the house in which the word "Luke" was handwritten inside each glove. The police investigated the case as a burglary and attempted murder.

On December 4, 1996, Henry William Luke was taken to the police station and questioned regarding the incident. Prior to questioning, Luke was given *Miranda*[1] warnings and acknowledged he understood. He signed a waiver of *Miranda* rights prior to being questioned about the burglary and attempted murder. During the questioning, Luke made incriminating statements. On December 5, 1996, the State charged Luke, by criminal complaint, with attempted murder in the second degree, burglary, and fail-

ure to register under the sex offender registration act.

An information was filed on January 10, 1997, charging Luke with attempted first degree murder. The information stated "without premeditation" and alleged torture, burglary and failure to register under the sex offender registration act. Luke entered a not guilty plea to all of the charges.

On May 12, 1997, Luke moved to suppress the statements he made to police at the station and to sever the failure to register charge from the other two charges. The motion to suppress alleged that the statements given to police were not made freely and voluntarily and violated Luke's rights under both the Idaho and U.S. Constitutions.

Ruling from the bench on October 20, 1997, the district court granted Luke's motion to sever. However, the court denied Luke's motion to suppress statements made during the police interrogation.

On November 18, 1997, the prosecuting attorney filed an amended information, again charging Luke with attempted murder in the first degree and burglary.

Also on November 18, 1997, the jury trial of Luke began. Following the seating and swearing-in of the jurors, Luke told his attorney that juror number twelve was one of the guards at the jail. The court allowed voir dire to be reopened and the juror was questioned by counsel for both sides as well as by the court. Following the questions, and upon objection, the court allowed juror number twelve to remain on the jury.

Following the presentation of both sides' cases, proposed jury instructions were discussed. Over the objection of Luke's counsel, the proposed instructions were adopted and submitted to the jury.

The jury returned its verdict on November 26, 1997, finding Luke guilty of burglary and of attempted murder in the second degree. The court sentenced him to a fixed fifteen-year term for the attempted murder, and a one-year fixed term for the burglary. Luke now appeals.

---

1. *Miranda v. Arizona,* 384 U.S. 436, 467–68, 86 S.Ct. 1602, 1624–25, 16 L.Ed.2d 694, 719–20 (1966).

## II.

### ANALYSIS

**A. Luke Voluntarily, Knowingly, And Intelligently Waived His *Miranda* Rights.**

Luke argues that since the police did not inform him of the exact reason for the interrogation, his waiver of *Miranda* was ineffective. Additionally, Luke argues that because he has limited mental skills, the waiver of his *Miranda* rights was not intelligently or knowingly given.

When reviewing a denial of a motion to suppress evidence, this Court defers to the findings of the trial court unless they are clearly erroneous. *State v. DuValt*, 131 Idaho 550, 553, 961 P.2d 641, 644 (1998). When statements made by a defendant during the course of an in-custody interrogation are offered at trial, the State "must establish a voluntary, knowing and intelligent waiver of the suspect's rights." *State v. Mitchell*, 104 Idaho 493, 497, 660 P.2d 1336, 1340 (1983). The trial court's conclusion that a defendant made a knowing and voluntary waiver of his *Miranda* rights will not be disturbed on appeal where it is supported by substantial and competent evidence. *Id.* at 498, 660 P.2d at 1341.

It is undisputed that Luke signed a waiver of his *Miranda* rights prior to being questioned by the police. An express written statement, waving *Miranda* rights, is strong, but not conclusive, proof of voluntary waiver. *Id.* at 497, 660 P.2d at 1340. However, Luke argues that the waiver was not voluntary because he was not informed of the specific allegation of attempted murder when he waived his rights.

The U.S. Supreme Court has ruled conclusively on the issue. In *Colorado v. Spring*, 479 U.S. 564, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987), the U.S. Supreme Court determined that when a suspect has been given *Miranda* warnings, it "conveys to a suspect the nature of his constitutional privilege and the consequences of abandoning it." *Id* at 577, 107 S.Ct. at 859, 93 L.Ed.2d at 968. The Court

concluded that "a suspect's awareness of all the possible subjects of questioning in advance of interrogation is not relevant to determining whether the suspect voluntarily, knowingly, and intelligently waived his Fifth Amendment privilege." *Id.*

In addition, this Court has determined that when a waiver is obtained, "it is not essential that a suspect be informed of the charges against her before being interrogated." *Mitchell*, 104 Idaho at 497, 660 P.2d at 1340. Therefore, considering both Idaho and federal law we hold that Luke's *Miranda* waiver was sufficient.

Next, Luke argues that even if the waiver was valid, the statements were not voluntary because the tactics used by the police overcame Luke's will due to his low mental ability. However, this argument is undercut by statements made by both his attorney[2] and his expert witness. At the suppression hearing, Luke's trial attorney admitted that the expert's testimony "was that if the Mirandas were read, [to] Mr. Luke, which they were, he could comprehend, so we're not making that an issue."

Additional evidence of Luke's mental ability is found in statements he made to the investigators during questioning. While his statements were generally responsive and cooperative, he did make comments that show he was mentally alert enough to understand the investigators' tactics. Twice he suggested that the investigators were trying to put words in his mouth. He explained that "*you say* that I did and I don't remember ever working for her." Then again "*you guys said* I went walking around the house looking for money." It is reasonable to conclude that Luke was able to recognize the interrogation tactics of the police during the investigation. It follows that if he recognized the interrogation techniques he was certainly keen enough not to be tricked or misled into giving an involuntary waiver.

Luke next argues that the investigators' promise of leniency was sufficient to overcome his will when the officer told him that "[i]f your cooperation is given to the prosecutor, he can pass it on to the judge and

**2.** *Luke's counsel on appeal is not the same attorney who represented Luke at trial.*

that can be in your favor or they may dismiss it."

■ When considering whether the statements given by a suspect were the product of coercion by police misconduct, this Court examines the totality of the circumstances to determine if the statement was the product of a rational intellect and of a free will. *Mitchell,* 104 Idaho at 499, 660 P.2d at 1342. Promises of leniency, in and of themselves, do not necessarily render a confession involuntary. *State v. Alger,* 100 Idaho 675, 680, 603 P.2d 1009, 1014 (1979).

In *Alger,* this Court considered whether a promise of leniency should be enough to find that a confession was not voluntary. *Id.* at 679, 603 P.2d at 1013. While this Court ultimately determined that there was not enough evidence to determine whether the promises had, in fact, been made, it did provide some guidance. In noting that cooperation would be brought to the attention of the judge, the Court explained that "[i]ndications of cooperation are routinely brought to the attention of a sentencing judge and cases before this Court are replete with examples of such statements." *Id.*

The district court found that the interview was conducted properly, and, in fact, in a "rather gentle manner." The district court acknowledged that police tactics were employed, but that "[t]here was no deception here. Nothing the officers did was untruthful." While considering the promise of leniency, the district court found that "there's nothing here where I can find that there was anything in the way of a promise made by the officers to the defendant to do anything other than to encourage him by various means."

We conclude that there was substantial evidence in the record upon which the district court based its decision to deny the motion to suppress. Therefore, we affirm the district court's denial of the motion to suppress Luke's statements to police.

**B. The District Court Did Not Deny Luke A Fair Trial By Allowing Juror Number Twelve To Remain On The Jury.**

■ Luke argues that the district court erred when it allowed one of the jurors, Mr. Gregg, to sit on the jury when Gregg was a jailor at the jail in which Luke was held. Luke contends that the two prongs of Idaho Code § 19–2020 dealing with juror challenge for cause have been met, and therefore the district court should not have allowed Gregg to serve on the jury.

■ The determination of whether a juror can render a fair and impartial verdict rests in the sound discretion of the trial court. *Morris ex rel. Morris v. Thomson,* 130 Idaho 138, 141, 937 P.2d 1212, 1215 (1997). On appeal, this Court reviews the trial court's selection of jurors for an abuse of discretion. *Id.* When deciding if the trial court abused its discretion in selecting a juror, this Court applies a three-factor test. *State v. Hedger,* 115 Idaho 598, 601, 768 P.2d 1331, 1333 (1989). These factors are: (1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason. *Id.*

During voir dire, the twelve jurors in the panel box were asked if any of them knew Luke, and none responded. Juror Gregg, a guard at the jail where Luke was held, was seated as juror number twelve after another juror had been excused. Luke claims that Gregg should have been excused by the district judge for cause because he failed to respond to the question of whether he knew Luke.

After the jury had been selected and sworn in, Luke asked his attorney why one of the jailors was allowed on the jury. When Luke's attorney brought the matter to the attention of the court, the court held a hearing in chambers to resolve the matter.

In chambers, Luke argued to the court that voir dire should be reopened because Gregg had given disingenuous responses during voir dire. The district court found that Gregg had been questioned with the other jurors and had not "indicated anything at all" that would have provided a reason to disqual-

ify him. However, the court allowed voir dire to be reopened.

Gregg was then called into chambers and asked by Luke's counsel if he knew Luke from the jail. Gregg responded that no, he did not know Luke personally, but that yes he had talked with Luke at the jail. The State then questioned Gregg as to whether he was in the jury box or the audience when the jurors in the panel box were asked if any of them knew Luke. Gregg responded that he was in the audience. Finally, the judge asked Gregg whether he knew of any facts about the case, and whether he could be impartial. Gregg responded that he had no information on the facts of the case and that he believed that he could be fair and impartial during the trial.

Based on the court's reopening of voir dire and the further questioning of Gregg, it is clear that the court recognized that it had the discretion to either allow Gregg on the jury or to exclude him for cause. The court was within the boundaries of its discretion and acted within legal boundaries by allowing the parties to question both Gregg and Luke. Finally, the court applied reason when it concluded Gregg's answers had not been untruthful, and that his position as a jail guard was insufficient to discharge him from the jury.

This case is similar to *State v. Bujanda-Velazquez*, where a juror was accused of concealing the fact that he was a friend of one of the prosecuting attorneys. *State v. Bujanda-Velazquez*, 129 Idaho 726, 932 P.2d 354 (1997). There, the prospective juror was asked whether he had any "friends or relatives that practiced criminal law." *Id.* at 729, 932 P.2d at 357. The juror did not respond, but it was later learned that he had several business dealings with the prosecuting attorney. *Id.* The juror testified that he and the prosecutor were not "good close friends," so he felt he had answered the question honestly. *Id.* In affirming the district court's decision not to excuse the juror, this Court recognized the district court's discretion to determine juror bias. *Id.* at 730, 932 P.2d at 358.

Here the district court did not abuse its discretion when it allowed Gregg to sit on the jury. Gregg testified, and the district court found, that he did not have a personal relationship with Luke and that he could be fair and impartial throughout the trial.

■ Luke also asserts that under the Idaho Code Gregg should not have been allowed to serve as a juror because of the jailor/prisoner relationship. This relationship, argues Luke, is similar to the implied bias relationships listed in I.C. § 19-2020(2).

This section provides in relevant part:

A challenge for implied bias may be taken for all or any of the following causes *and for no other*:

2. Standing in the relation of guardian and ward, attorney and client, master and servant, or landlord and tenant, or being a member of the family or boarder or lodger of the defendant, or of the person alleged to be injured by the offense charged or on whose complaint the prosecution was instituted, or in his employment on wages.

I.C. § 19-2020(2) (emphasis added).

The Court of Appeals faced a similar issue in *State v. Bowman*, 124 Idaho 936, 941-42, 866 P.2d 193, 198-99 (Ct.App.1993). In that case, three of the prospective jurors were members of The Church of Jesus Christ of Latter Day Saints in a ward over which the prosecuting attorney presided as Bishop. *Id.* The Court of Appeals held that, even though the relation of church leader/church member was unusual in the courtroom setting, the court could not expand the statute to similar situations. *Id.* It reasoned that "[b]ecause the legislature saw fit to include the language 'and for no other' we will not extend the statute to situations that are analogous, but not specifically mentioned." *Id.* at 942, 866 P.2d at 199.

■ Following this rationale, we affirm the district court in holding that I.C. § 19-2020 does not provide for exclusions not specifically mentioned.

**C. The Crime Of Attempted Second Degree Murder By Torture Is Not A Crime In Idaho, Absent A Specific Showing Of Intent To Commit Murder.**

Luke argues that his conviction must be vacated because the crime listed in the

amended criminal information, attempted first degree murder by torture, is not a crime in Idaho. The State contends that Luke's challenge to the criminal information is untimely because it was not raised prior to the appeal. Alternatively, the State argues that the criminal information is sufficient because, while it may have been inaccurate as to the attempted first degree murder language, it properly charged Luke by citing the statute with the crime for which he was ultimately convicted.

■ Before reaching the merits of the issue, we must first address the State's claim that Luke waived his right to challenge the sufficiency of the information by failing to raise the issue prior to appeal. Idaho Criminal Rule 12(b)(2) states that some defenses must be raised prior to trial. Among these are "[d]efenses and objections based on defects in the complaint, indictment or information (other than it fails to show jurisdiction of the court or to charge an offense which objection shall be noticed by the court at any time during the pendency of the proceedings)." I.C.R. 12(b)(2).

As stated, one of the two exceptions to Rule 12(b)(2) is that a claim that the information failed to charge an offense may be raised at any time. Luke argues with merit that the information charging him with attempted first degree murder by torture is not an offense in Idaho. Thus, Luke's failure to raise this issue below does not preclude this appeal.

Luke supports his claim that attempted first degree murder by torture is not a crime in Idaho, by citing *State v. Pratt*, 125 Idaho 546, 558, 873 P.2d 800, 812 (1993). In *Pratt*, the defendant argued that since intent was not required for felony murder, but was an element of the crime of attempt, there could be no crime of attempted felony murder. *Id.* This Court agreed, stating "there is either the crime of murder, or the crime of attempt to commit a crime, in which case the state bears the burden of proving that the defendant *intended* to commit the crime." *Id.* (emphasis in original). Thus, this Court held that Pratt could not be convicted of attempted first degree felony murder because while intent is not a necessary element of felony

murder, it is necessary for the crime of attempt. *Id.*

Therefore, *Pratt* leads to the conclusion that attempted first degree murder by torture, absent a specific showing of intent, is not a crime in Idaho. This is because, like first degree felony murder, first degree murder by torture does not require a specific showing of intent to sustain a conviction. However, as pointed out in *Pratt* the crime of attempt does require a specific showing of intent to commit the underlying crime.

■ Likewise, the crime of attempted second degree murder by torture is also not a crime in Idaho without a specific showing of intent to commit murder. Even though the crime of second degree murder does not require a specific showing of intent, the crime of attempt does. Thus, Luke could not be convicted of the crime of attempted second degree murder by torture unless the jury found that Luke acted with the specific intent to kill Kjera.

Therefore, we must review the jury instructions to determine whether the jury was instructed that it must find that Luke intended to kill Kjera in order to find him guilty of attempted second degree murder. We must also review the jury instructions to determine whether there is any other possible basis to support Luke's conviction for attempted second degree murder.

**D. The Jury Instructions Failed To Sufficiently Instruct The Jury On The Elements Of Attempted Second Degree Murder.**

■ Whether the jury instructions fairly and adequately present the issues and state the applicable law is a question of law over which this Court exercises free review. *State v. Bush*, 131 Idaho 22, 32, 951 P.2d 1249, 1259 (1997). When this Court reviews jury instructions, it must first determine whether the instructions as a whole, and not individually, fairly and accurately reflect the applicable law. *State v. Row*, 131 Idaho 303, 310, 955 P.2d 1082, 1089 (1998). An instruction is not reversible error unless it misled the jury or prejudiced the complaining party. *Id.*

This Court has recently held that jury instructions on attempted second degree murder must include the element of intent necessary for the crime of attempt. In *State v. Buckley*, 131 Idaho 164, 953 P.2d 604 (1998), a jury convicted Buckley of attempted second degree murder. *Id.* On appeal, Buckley claimed that the jury instructions were incorrect because they did not include the necessary element of intent required for a conviction of attempt. *Id.* at 165, 953 P.2d at 605.

Quoting I.C. § 18-4002, the Court in *Buckley* explained that malice is broken down into two forms of intent. There is express intent which contains a manifest intention, and implied intent which entails killing with an abandoned or malignant heart. *Buckley*, 131 Idaho at 165, 953 P.2d at 605. The Court held that implied malice was not sufficient to convict Buckley of attempted second degree murder. *Id.* The Court therefore vacated the conviction and remanded for a new trial. *Id.* at 167, 953 P.2d at 607.

 In Luke's case, the jury was instructed that:

> You will notice that the crime of MURDER IN THE SECOND DEGREE, as charged in this case, does not require a finding beyond a reasonable doubt that torture be inflicted with the intent to cause suffering, to execute vengeance, to extort something from the victim, or to satisfy some sadistic inclination as does the crime of MURDER IN THE FIRST DEGREE by torture. It does, however, require the intentional application of torture to a human being, which results in the death of a human being.

 This jury instruction allows the jury to convict Luke absent a finding of specific intent. Thus, the jury could have convicted Luke on a basis of less than a specific intent to kill Kjera. In cases where it is not possible to determine if the jury reached the verdict on the correct or incorrect legal theory, this Court must vacate the conviction and remand the case for a new trial. *Buckley*, 131 Idaho at 166-67, 953 P.2d at 606-07. Therefore, because it is not possible to determine on which basis the jury found Luke guilty, we vacate the conviction of attempted second degree murder.

### III.

### CONCLUSION

The district court properly denied Luke's motion to suppress his incriminating statements. The statements were given after a valid *Miranda* waiver. The district court did not abuse its discretion when it allowed juror Gregg, after reopening voir dire and questioning him, to sit on the jury.

However, the amended information charged Luke with an offense which is not a crime in Idaho, without the required showing of intent. The jury instructions failed to properly instruct the jury on the elements of second degree murder by torture. Therefore, we affirm the district court's decision on Luke's waiver of his *Miranda* rights and allowing juror Gregg to sit on the jury. Thus, the judgment of conviction on Count II, burglary is affirmed. However, because of errors in the amended information and the jury instructions, we vacate the attempted second degree murder judgment of conviction.

Justices SCHROEDER and WALTERS concur.

Chief Justice TROUT, concurring in the result.

While I agree with the Court's reversal of Luke's conviction, I cannot join in the Court's analysis in Parts C and D of the opinion.

The Court properly determines the crimes of attempted first degree murder by torture and attempted second degree murder by torture do not exist in Idaho because, although intent to kill is not a necessary element of first or second degree murder by torture, it is a necessary element of the crime of attempt. However, after making this determination, the Court then says that, despite the fact attempted second degree murder by torture is not a crime in Idaho, Luke could still be convicted of attempted second degree murder by torture as long as the jury made the requisite finding that Luke intended to kill the victim. The opinion suggests that jury instructions can create a crime where

one would otherwise not exist and cite *State v. Pratt,* 125 Idaho 546, 873 P.2d 800 (1993) for that proposition.

In *Pratt,* the defendant argued he was improperly convicted of attempted first degree murder because the only type of attempted first degree murder he could have been convicted of was attempted felony murder. The Court agreed Pratt could not have been convicted of attempted felony murder because that is not a crime in Idaho. The Court did not say Pratt could have been convicted of attempted felony murder if the State had made the requisite showing of intent. Rather, the Court stated:

> From the jury's verdict on Count XVI, we cannot discern which theory the jury agreed upon to convict Pratt of the attempted first degree murder of Deputy Steve Barbieri. The jury could have based its verdict upon Barbieri being a law enforcement officer or upon the attempt occurring during the commission of certain felonies. Since we cannot discern the jury's theory from the record, we vacate Pratt's conviction and sentence ... regarding attempted first degree murder of Deputy Steve Barbieri.

*Pratt,* 125 Idaho at 558, 873 P.2d at 812. In the context of the *Pratt* case, a specific finding by the jury that Pratt intended to kill the officer would have supported Pratt's conviction of attempted first degree murder, but only because it would have provided an alternate basis for Pratt's conviction (i.e. attempted first degree murder of a law enforcement officer), not because it would have somehow allowed for Pratt's conviction of attempted felony murder. Therefore, *Pratt* does not support the proposition that a specific finding of attempt will support a conviction for a crime that does not otherwise exist. Instead, the only way a specific finding of intent to kill would save Luke's conviction is if he were properly charged with attempted second degree murder on some other theory besides murder by torture.

In order for Luke to have been properly convicted of attempted second degree murder on some other theory besides murder by torture, the charge must have been contained within the information charging Luke with attempted murder. A plain reading of the amended information filed against Luke demonstrates the information was insufficient to charge him with anything but attempted first or second degree murder by torture. This Court has previously held an information is sufficient if it contains the elements of the offense charged, fairly informs the defendant of the charges against him, and enables him to plead an acquittal or conviction in any future prosecution for the same offense. *See State v. Windsor,* 110 Idaho 410, 417, 716 P.2d 1182, 1189 (1985). In this case, the information only put Luke on notice he was being charged with *attempted murder by torture,* either in the first or second degree; crimes that do not exist in Idaho. It did not put him on notice he could be convicted of second degree murder on some other theory of the case. It is, therefore, unnecessary to examine the jury instructions for an instruction requiring the jury to find Luke acted with the specific intent to kill because, even had such an instruction been given, the fatal defects in the amended information would still have required the reversal of Luke's conviction.

Justice SILAK concurs.