**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 43356**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2016 Opinion No. 66** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed:  October 21, 2016** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **DANIEL JENSEN,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Jerome County.  Hon. John K. Butler, District Judge.

Judgment of conviction and sentence for poisoning food, medicine, or wells, <u>affirmed</u>.

Eric D. Fredericksen, Interim State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.  Jenny C. Swinford argued.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.  John C. McKinney argued.

---

GRATTON, Judge

Daniel Jensen appeals from his judgment of conviction for poisoning food, medicine, or wells, a felony under Idaho Code § 18-5501.  Jensen was originally charged with attempted first degree murder for putting poison in his mother's coffee.  Idaho Code § 20-509 operates to automatically waive minors between the ages of fourteen and eighteen into adult court for certain enumerated crimes, including attempted first degree murder.  Jensen was, thus, automatically waived into adult court.  On appeal, Jensen argues the district court erred by denying his motions to declare I.C. § 20-509 unconstitutional and to suppress statements he made to law enforcement.  We affirm.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Jensen's mother reported to police that her son, then seventeen years old, had tried to poison her. Two responding officers arrived and Jensen's mother was standing in the doorway while Jensen and a friend were on the front porch. An officer started to ask Jensen questions and after Jensen and his mother began to argue, the other officer took the mother inside while Jensen continued to be questioned outside.

Jensen's mother indicated that there were green flakes in her coffee for the past few days. She stated that she and Jensen had just argued and he said, "If I were you I wouldn't drink any more coffee." She stated she then retrieved, from Jensen's bedroom, a bag containing a green substance that she had previously thought to be soap. It was later identified as mouse poison. The mother said her boyfriend and eleven-year-old son also drank the coffee.

The officer who questioned Jensen stated that Jensen admitted to obtaining the poison from a mouse trap in the garage and putting the poison in the coffee. He said he did this because his mother was not letting him go anywhere; however, he denied that he was trying to kill her. He also said he was tired of his life and he also drank the coffee. The officer then arrested Jensen and transported him to the juvenile detention center. Several days later, a different officer interviewed Jensen at the detention center and Jensen admitted to putting the poison in the coffee in an effort to "get rid of" his mother.

Jensen was initially charged with attempted first degree murder for placing mouse poison in his mother's coffee, two counts of aggravated battery, misdemeanor malicious injury to property, and misdemeanor possession of tobacco by a minor. An amended complaint invoked I.C. § 20-509, which automatically transferred him to adult court. Jensen filed a motion to declare the waiver statute unconstitutional. After a preliminary hearing, the magistrate dismissed the aggravated battery charges and bound him over to the district court for attempted murder in the first degree. The district court denied Jensen's motion to declare the waiver statute unconstitutional. Jensen then filed a motion to suppress statements he made to law enforcement both before and after his arrest. The district court denied the motion to suppress.

Pursuant to a plea agreement, Jensen entered a conditional plea to an amended charge of poisoning food, medicine, or wells, a felony under I.C. § 18-5501, while reserving his right to appeal from the district court's denial of his two motions, and the State dismissed the

2

misdemeanors. The district court sentenced Jensen to a unified term of five years with two years determinate, suspended the sentence, and retained jurisdiction. Jensen was committed to the dual custody of the Idaho Department of Juvenile Corrections (DJC) and the Idaho Department of Correction. The court indicated that it intended to resentence Jensen as an adult following the commitment to the DJC when it was determined that Jensen had received all the rehabilitation that could be offered at the DJC, or no later than Jensen turning twenty-one years old. Jensen timely appeals.

## II.

## ANALYSIS

Jensen argues that the automatic waiver provision of I.C. § 20-509 violates the Eighth Amendment which prohibits cruel and unusual punishment, and the Fourteenth Amendment's due process clause. Jensen further argues that the district court erred by denying his motion to suppress statements he made both before and after his arrest.

### A.     Idaho Code § 20-509

Idaho Code § 20-509 provides that a minor between the ages of fourteen and eighteen who commits certain enumerated offenses "shall be charged, arrested, and proceeded against by complaint, indictment or information as an adult." I.C. § 20-509. It also states: "All other felonies or misdemeanors charged in the complaint, indictment or information, which are based on the same act or transaction or on one (1) or more acts or transactions as the violent or controlled substances offense shall similarly be charged, arrested and proceeded against as an adult." *Id*. The constitutionality of a statute is a question of law that we review de novo. *State v. Reyes*, 146 Idaho 778, 779, 203 P.3d 708, 709 (Ct. App. 2008). The party challenging a statute on constitutional grounds bears the burden of establishing that the statute is unconstitutional and must overcome a strong presumption of validity. *Id.*

#### 1.     The Eighth Amendment

Jensen argues that the automatic waiver provision of I.C. § 20-509 constitutes cruel and unusual punishment prohibited by the United States Constitution and the Idaho Constitution. He relies on *Montgomery v. Louisiana*, ___ U.S. ___, 136 S. Ct. 718 (2016); *Miller v. Alabama*, ____ U.S. ____, 132 S. Ct. 2455 (2012); *Graham v. Florida*, 560 U.S. 48 (2011); and *Roper v. Simmons*, 543 U.S. 551 (2005). In *Roper*, the United States Supreme Court held that the Eighth Amendment prohibits the imposition of the death penalty for juvenile offenders. *Roper*,

3

543 U.S. at 553. It reasoned that a juvenile's "lack of maturity" and "underdeveloped sense of responsibility" lead to recklessness, impulsivity, and heedless risk-taking. *Id.* at 569. Similarly, *Graham* found that the Eighth Amendment does not permit a juvenile offender to be sentenced to life in prison without parole for a nonhomicide crime. *Graham*, 560 U.S. at 48. *Miller* also held that the Eighth Amendment forbids the sentencing of a minor to prison without the possibility of parole. *Miller*, ____ U.S. at ___, 132 S. Ct. at 2457-58. *Montgomery* held that the Eighth Amendment prohibition against sentencing a juvenile to life without the possibility of parole was retroactive. *Montgomery*, ___ U.S. at ___, 136 S. Ct. at 724. Although recognizing that these cases do not directly apply to his constitutional challenge to the automatic waiver, Jensen's overarching contention from these cases is that "youth matters," and that the automatic waiver forecloses consideration of his youth and attendant characteristics, thereby triggering similar Eighth Amendment concerns.

To address a constitutional challenge to the Eighth Amendment prohibiting cruel and unusual punishment, we first make a threshold comparison of the crime committed and the sentence imposed to determine whether the sentence leads to an inference of gross disproportionality. *State v. Matteson*, 123 Idaho 622, 626, 851 P.2d 336, 340 (1993); *State v. Brown*, 121 Idaho 385, 394, 825 P.2d 482, 491 (1992); *State v. Olivera*, 131 Idaho 628, 632, 962 P.2d 399, 403 (Ct. App. 1998). The United States Supreme Court has held that the Eighth Amendment "prohibits the infliction of cruel and unusual punishments *on those convicted of crimes*." *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991) (emphasis added). Here, Jensen challenges I.C. § 20-509 as imposing cruel and unusual punishment; however, I.C. § 20-509 is a procedural statute. This procedural statute in and of itself creates no punishment at all. There is no sentence imposed by I.C. § 20-509. Being waived into adult court, whether mandatory or discretionary, is not a punishment. The Eighth Amendment only comes into play after a formal adjudication of guilt and therefore, does not apply.

Jensen argues that simply determining whether a punishment is proscribed by the statute is overly simplistic. He asserts that while the statute itself may not impose a punishment, it is subject to Eighth Amendment scrutiny because it is penal in nature and has the effect of exposing the juvenile to adult sentencing without consideration of immaturity. First, as noted, the Eighth Amendment is not triggered until after the State has secured an adjudication of guilt in accordance with due process of law. *Bell v. Wolfish*, 441 U.S. 520, 536, n.16 (1979). The

automatic waiver is a procedure employed in the adjudication of guilt phase. Second, the statute takes into consideration the age of the group to which it applies, fourteen to eighteen year olds, in relation to the severity of certain crimes. As to those crimes, it is not, as Jensen implies, that he is automatically removed from juvenile jurisdiction but, as we have held in the due process context, he had no statutory right to be proceeded against as a minor and was never entitled to the advantage of being proceeded against as a minor. *State v. Anderson*, 108 Idaho 454, 457-458, 700 P.2d 76, 79-80 (Ct. App. 1985). Third, Jensen claims that the automatic waiver provision subjects juveniles to excessive sanctions by treating them as adults without accounting for their diminished culpability and individual characteristics. While it may be that the automatic waiver requires adult court proceedings through the determination of guilt without further consideration of youthful characteristics, that is not so at the sentencing phase. Upon a conviction pursuant to I.C. § 20-509, the district court may sentence the juvenile in accordance with adult sentencing measures, juvenile sentencing options provided in the Juvenile Corrections Act (JCA), or a blended sentence. I.C. § 20-509(4). The district court may use a juvenile sentence or blended sentence if "a finding is made that adult sentencing measures would be inappropriate." *Id*. So, while the norm may be adult sentencing, from the face of the statute, youthful characteristics can indeed be considered at sentencing where the Eighth Amendment is concerned. Moreover, as applied to Jensen, that is exactly what the district court did in electing a blended sentence in consideration of Jensen's "maturity level," contrasted by the seriousness of the crime. The district court did not error in rejecting Jensen's Eighth Amendment violation claim.

## 2. The Fourteenth Amendment

The Fourteenth Amendment prohibits the State from depriving any person of life, liberty, or property, without due process. Jensen claims he received no process at all regarding whether his prosecution should be in adult or juvenile court because the automatic waiver provision bypasses the juvenile system entirely upon the prosecutor's charging decision. He asserts the statute also deprives certain juveniles of a liberty interest in the Juvenile Corrections Act. He acknowledges that juveniles in Idaho have repeatedly failed when raising due process challenges to the automatic waiver set forth in I.C. § 20-509, but contends that the recent United States Supreme Court opinions have drastically altered the legal landscape regarding punishment of juveniles for criminal offenses.

5

Jensen maintains the Eighth Amendment cases, *Miller*, *Graham*, and *Roper*, in conjunction with *Kent v. United States*, 383 U.S. 541 (1966), establish that juveniles have a liberty interest in not being automatically treated as adults in the criminal justice system, and that the automatic waiver provision based on age and offense alone "robs the trial court of its ability to make an individualized determination for each juvenile based on the wide variances in a juvenile's maturity, sophistication, intelligence, family history, and social adjustment." In *Kent*, the United States Supreme Court acknowledged "that the waiver of jurisdiction is a 'critically important' action determining vitally important statutory rights of the juvenile." *Id*. at 556. That case dealt with the lower court's waiver of juvenile jurisdiction without the required statutory procedures to which the juvenile defendant was entitled. *Id*. at 563. Jensen argues the reasoning set forth in that opinion applies to the present case. The Court acknowledged the significance of following the statutory procedures when deciding whether to waive a juvenile into adult court, holding:

> [T]here is no place in our system of law for reaching a result of such tremendous consequences without ceremony--without hearing, without effective assistance of counsel, without a statement of reasons. It is inconceivable that a court of justice dealing with adults, with respect to a similar issue, would proceed in this manner.

*Id*. at 554. The Court also noted that juvenile courts are "theoretically engaged in determining the needs of the child and of society rather than adjudicating criminal conduct," and that "[t]he objectives are to provide measures of guidance and rehabilitation for the child and protection for society, not to fix criminal responsibility, guilt and punishment." *Id.* at 554.[1]

While we understand the magnitude of analyzing individual juvenile characteristics, the Eighth Amendment cases presented by Jensen are not directly on point. This Court also acknowledges the United States Supreme Court's concern with individual child characteristics being taken into consideration; however, this situation is not analogous to the *Kent* line of cases. This Court has long held that the automatic waiver provision does not violate the due process clause of the Fourteenth Amendment. *See State v. Hernandez*, 133 Idaho 576, 990 P.2d 742 (Ct. App. 1999); *State v. Juhasz*, 124 Idaho 851, 865 P.2d 178 (Ct. App. 1993); *Anderson*, 108 Idaho 454, 700 P.2d 76. Stare decisis dictates that we follow controlling precedent, unless it is manifestly wrong, unless it has proven over time to be unjust or unwise, or unless overturning it

---

[1] In *State v. Gibbs*, 94 Idaho 908, 500 P.2d 209 (1972), our Supreme Court recognized the holding in *Kent*. The *Gibbs* Court held that where the waiver statute sets forth mandatory procedures, notice and opportunity to be heard are necessary to satisfy procedural due process.

6

is necessary to vindicate plain, obvious principles of law and remedy continued injustice. *State v. Bradshaw*, 155 Idaho 437, 439, 313 P.3d 765, 767 (Ct. App. 2013). None of Jensen's arguments meet this threshold in overturning prior precedent on this issue. As noted, Jensen had no statutory right and no expectation, from either legislation or state conduct, that he could be proceeded against as a minor. *Anderson*, 108 Idaho at 457-458, 700 P.2d at 79-80. Consequently, since he was never entitled to be charged or tried as a juvenile, he never had a liberty interest in being placed in the juvenile court system. Without a liberty interest deprivation, the Fourteenth Amendment is not implicated. Further, the cases Jensen relies on dealt with sentences of life without parole or capital punishment and are not directly relevant to a determination whether the automatic waiver violates due process. The cases, while dealing with the importance of youthful considerations in sentencing, do not support a claim of a liberty interest in being charged and tried as a juvenile. We recognize that individual characteristics must be considered in the sentencing phase, and as noted in the Eighth Amendment analysis, there is a safeguard in sentencing for juveniles because blended sentences are allowed. In this case a blended sentence was imposed, which demonstrates that the district court gave consideration to Jensen's status as a juvenile. Under *Kent*, where the statute requires proceedings in the trial court regarding waiver, due process, notice, and opportunity to be heard attach. That holding is not applicable here. The district court did not err in rejecting Jensen's Fourteenth Amendment claim.

While we affirm the district court's holding as to this claim, at oral argument Jensen highlighted certain problems of substantial concern as to the construction of and compliance with the Juvenile Corrections Act. He noted the differences and consequences from being in adult court versus juvenile court aside from sentencing, such as: the lack of a reverse waiver for the district court to reevaluate and transfer the juvenile back into juvenile court, the waiver invokes a practice of "once an adult, always an adult" meaning that any future offenses by the juvenile will result in an automatic waiver into adult court regardless of the future crime, and that adult court proceedings in general are unlike those of juvenile court. Jensen has not shown, however, how the circumstances attendant in adult court versus proceedings in juvenile court in this particular case render the automatic waiver unconstitutional.

7

**B.     Motion to Suppress**

Jensen argues the district court erred when denying his motion to suppress statements he made to law enforcement. The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

**1.     Statements made prior to arrest**

Jensen first addresses statements he made to a responding police officer on the front porch of his mother's home prior to his arrest. He argues that because he was not provided any *Miranda*[2] warnings prior to the officer questioning him, his statements should have been suppressed.

The requirement for *Miranda* warnings is triggered by custodial interrogation. *State v. Medrano*, 123 Idaho 114, 117, 844 P.2d 1364, 1367 (Ct. App. 1992). The United States Supreme Court equated custody with a person being deprived of his or her freedom by the authorities in any significant way. *Miranda v. Arizona*, 384 U.S. 436, 478 (1966). This test has evolved to define custody as a situation where a person's freedom of action is curtailed to a degree associated with formal arrest. *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984); *State v. Myers*, 118 Idaho 608, 610, 798 P.2d 453, 455 (Ct. App. 1990). The initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned. *Stansbury v. California*, 511 U.S. 318, 323 (1994). To determine if a suspect is in custody, the only relevant inquiry is how a reasonable person in the suspect's position would have understood his or her situation. *Berkemer*, 468 U.S. at 442; *Myers*, 118 Idaho at 611, 798 P.2d at 456.

A court must consider all of the circumstances surrounding the interrogation. *Stansbury*, 511 U.S. at 322; *State v. James*, 148 Idaho 574, 577, 225 P.3d 1169, 1172 (2010). Factors to be considered may include the degree of restraint on the person's freedom of movement (including

---

[2]     *See Miranda v. Arizona*, 384 U.S. 436 (1966).

whether the person is placed in handcuffs), whether the subject is informed that the detention is more than temporary, the location and visibility of the interrogation, whether other individuals were present, the number of questions asked, the duration of the interrogation or detention, the time of the interrogation, the number of officers present, the number of officers involved in the interrogation, the conduct of the officers, and the nature and manner of the questioning. *See Berkemer*, 468 U.S. at 441-42; *James*, 148 Idaho at 577-78, 225 P.3d at 1172-73. The burden of showing custody rests on the defendant seeking to exclude evidence based on a failure to administer *Miranda* warnings. *James*, 148 Idaho at 577, 225 P.3d at 1172.

The district court determined that Jensen was not in custody such that *Miranda* warnings were required. The district court found the questioning was calm and in the presence of a friend. It was for a brief period of time, lasting only ten to twelve minutes. It was conducted in a familiar environment as it was at his home. Jensen's movements were not verbally or physically restricted and there was no show of force, such as emergency lights, when the officers arrived. Further, Jensen was seventeen years old at the time he was questioned.

Jensen argues that the officer was aware that he was seventeen years old, but did not specifically ask for the mother's permission to question Jensen or advise Jensen he could have a parent present. After the officers arrived, Jensen and his mother began to argue and an officer separated them by taking the mother inside. The subject of the questioning was Jensen's attempt to harm that parent. Jensen further contends that the officer testified he would have been detained if he had tried to leave, which supports the claim that he was in custody. However, Jensen was never told he was not free to leave. Moreover, the subjective view of the officer is not relevant to whether Jensen was in custody. *Myers*, 118 Idaho at 610, 798 P.2d at 455. Jensen also asserts that his status as a juvenile should be factored into the custody analysis, noting the United States Supreme Court has held that "a child's age is far 'more than a chronological fact.'" *J.D.B. v. N. Carolina*, ___ U.S. ___, ___, 131 S. Ct. 2394, 2403 (2011). The Court held that "so long as the child's age was known to the officer at the time of police questioning, or would have been objectively apparent to a reasonable officer, its inclusion in the custody analysis is consistent with the objective nature of [the custody] test." *Id*. at ____, 131 S. Ct. at 2406. Jensen's age was known to the officer at the time of questioning and was included in the custody analysis. The district court considered all of the circumstances

surrounding the interrogation and properly concluded that Jensen was not in custody for the purposes of a *Miranda* warning.

> **2.      Statements made after arrest**

Jensen next focuses on statements he made to a police officer during an interview at the juvenile detention center days after his arrest. He argues that his waiver of his *Miranda* rights was involuntary under the circumstances.

Any waiver of *Miranda* rights or the underlying constitutional privilege against self-incrimination must be made knowingly, voluntarily, and intelligently. *State v. Dunn*, 134 Idaho 165, 169, 997 P.2d 626, 630 (Ct. App. 2000). The State bears the burden of demonstrating that an individual has knowingly, voluntarily, and intelligently waived his or her rights by a preponderance of the evidence. *State v. Doe*, 131 Idaho 709, 712, 963 P.2d 392, 395 (Ct. App. 1998). A trial court's conclusion that a defendant made a knowing and voluntary waiver of his or her *Miranda* rights will not be disturbed on appeal where it is supported by substantial and competent evidence. *State v. Luke*, 134 Idaho 294, 297, 1 P.3d 795, 798 (2000). An appellate review of this waiver issue encompasses the totality of the circumstances. *State v. Johnson*, 126 Idaho 859, 863, 893 P.2d 806, 810 (Ct. App. 1995).

A written *Miranda* rights waiver is "strong proof of a voluntary waiver" but the State still has the burden of proving a knowing, intelligent, and voluntary waiver. *State v. Doe*, 137 Idaho 519, 523, 50 P.3d 1014, 1018 (2002). In *Doe*, the Supreme Court stated:

> To determine whether a juvenile has voluntarily waived his *Miranda* rights, a court must consider "the juvenile's age, experience, education, background, and intelligence," and "whether he had the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights."

*Id.* (internal citations omitted).

Jensen's argument that the district court erred is largely based on his status as a juvenile at the time of questioning which he claims contributed to his inability to understand the severity of the situation. This he claims is evidenced by the lone question posed by Jensen at the outset of the interview to the effect of what was going to be his living situation when he was released. He also notes that his parents were not notified of the officer's plan to interview Jensen and that he was never informed that he had a right to have a parent present when he waived his *Miranda* rights.

The district court found that Jensen indicated he could read, write, and understand English. The officer knew that Jensen was seventeen years old. Jensen communicated he was aware that at least one of the charges was a battery charge. Jensen understood the interviewer was a law enforcement officer. The officer went over each of Jensen's rights set out in the waiver and Jensen indicated he understood his rights and initialed the form as to each. He indicated he was willing to talk without an attorney. The interview lasted an hour. The district court found that it was clear from the audio recording that Jensen understood his rights, that the conversation was calm and not adversarial, and there was no evidence to suggest sleep or food deprivation. Further, the district court found that Jensen was alert, understood what was happening, and knew that he was not required to speak with the officer unless he wanted to do so. The district court recognized that the absence of Jensen's parents was a factor to be considered in the totality of circumstances, but did not in itself render the waiver invalid. The court emphasized that the officer went over each right with Jensen and that he would further explain the rights if Jensen had any questions. He did not downplay the significance of the waiver and, in fact, the officer made it clear he could not speak with Jensen unless he understood his rights and was willing to speak of the events.

It is clear that the trial court's determination that Jensen made a knowing and voluntary waiver of his *Miranda* rights is supported by substantial and competent evidence. The district court considered all of the circumstances and properly found that Jensen voluntarily waived his *Miranda* rights.

### III.

### CONCLUSION

Jensen has failed to establish that I.C. § 20-509 violates the Eight Amendment prohibiting cruel and unusual punishment or the Fourteenth Amendment's due process clause. Jensen failed to show the district court erred in denying his motion to suppress statements he made prior to and after his arrest. Therefore, his judgment of conviction and sentence for poisoning food, medicine, or wells are affirmed.

Chief Judge MELANSON and Judge HUSKEY **CONCUR**.