## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 47263

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, November 2020 Term |
| | ) | |
| v. | ) | Opinion Filed: March 19, 2021 |
| | ) | |
| LUCAS TY OROZCO, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Christopher S. Nye, District Judge.

The decision of the district court is affirmed.

Eric D. Fredericksen, State Appellate Public Defender, Boise, for Appellant. Ben P. McGreevy argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent. Kenneth K. Jorgensen argued.

_____

MOELLER, Justice.

This case asks us to consider the constitutionality of a statute requiring juvenile offenders to be tried as adults for certain violent offenses, including robbery. Idaho Code section 20-509, which is sometimes referred to as an "automatic waiver," mandates that a juvenile accused of committing one of the enumerated offenses "shall be charged, arrested and proceeded against by complaint, indictment or information as an adult." I.C. § 20-509(1).

Fifteen-year-old Lucas Orozco was charged with robbery and burglary, both felonies, for allegedly robbing a Caldwell convenience store. After a magistrate court determined there was probable cause to charge Orozco with the felonies, it waived juvenile jurisdiction and bound him over to district court as an adult pursuant to Idaho Code section 20-509. Orozco objected to this automatic waiver, filing a motion with the district court challenging the constitutionality of section 20-509. The district court denied the motion, relying on precedent from the Idaho Court of Appeals, which has previously upheld the constitutionality of section 20-509. Orozco appealed,

1

arguing that the automatic waiver denied him procedural due process protections afforded to him by the U.S. Constitution. For the reasons set forth below, we affirm the decision of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 2, 2018, three masked individuals carrying guns[1] robbed a Jacksons convenience store in Caldwell, Idaho. The Jacksons' employee stated that three males entered the store and demanded that money from the cash register be placed in a blue backpack. The men also grabbed some cigars from behind the counter before fleeing the store and driving away in a silver Hyundai Accent. The employee stated that as the three were leaving the store, one of them threatened, "if you call the police we'll come back and kill you."

After a brief investigation, police conducted a traffic stop of a silver Hyundai Accent driven by a seventeen-year-old male. The officer observed evidence inside the vehicle that matched the employee's description of the robbery, and the driver was taken to the Caldwell Police Department for questioning. Eventually, the driver revealed the names of the other two accomplices, one of whom was fifteen-year-old Lucas Orozco. On November 4, 2018, police interviewed Orozco at the Caldwell police station after apprising him of his *Miranda*[2] rights. Orozco confessed to taking part in the robbery and was arrested.

A criminal complaint charged Orozco with one count of robbery in violation of Idaho Code section 18-6501 and one count of burglary in violation of Idaho Code section 18-1401. During the preliminary hearing, the magistrate court found probable cause existed and bound Orozco over to district court. Because Orozco was charged with robbery—one of the enumerated offenses under section 20-509—the magistrate court automatically waived juvenile jurisdiction over him. However, it ordered that he be housed in a juvenile correction facility. The State then filed an Information in the district court charging Orozco, as an adult, with robbery and burglary. On December 11, 2018, Orozco filed an objection to the automatic waiver and moved the district court to declare Idaho Code section 20-509 unconstitutional. At a hearing on January 30, 2019, the district court orally denied Orozco's motion.

---

[1] In their initial interviews with law enforcement, the three suspects explained that they brought a BB gun, an Airsoft gun, and an unloaded 22-caliber hand gun to carry out the robbery.

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

As part of a conditional plea agreement, Orozco agreed to plead guilty to the burglary charge in exchange for a dismissal of the robbery charge. Additionally, the State agreed to recommend probation and not object to an order withholding judgment, so long as Orozco fully complied with the terms of his pretrial release until the date of sentencing. Conversely, if Orozco did not comply with the terms of his pretrial release, the State would proceed on both the robbery and burglary charges.

At the change of plea hearing, the district court inquired with Orozco's counsel regarding the status of the automatic waiver for the burglary charge.[3] Counsel for Orozco clarified, "Your Honor, once he's been auto waived, he's always auto waived. So even though – even though with the dismissal of the robbery [charge], unless the State were to completely dismiss the charge and refile it in juvenile court, it stays here [in adult court]." During the plea hearing, Orozco reserved his right to appeal the district court's decision on the constitutionality of section 20-509. The district court then engaged in a plea colloquy with Orozco and conditionally accepted his guilty plea for the burglary charge. Orozco was released pending sentencing.

Orozco was sentenced on June 26, 2019. At the hearing, the State acknowledged that Orozco had fully complied with the terms of his pretrial release. The State agreed to dismiss the robbery charge, recommend probation, and not object to a withheld judgment. The district court entered an order withholding judgment and placed Orozco on six years of probation.[4] The district court also dismissed the robbery charge. Orozco timely appeals the district court's denial of his motion to declare Idaho Code section 20-509 unconstitutional.

## II.     STANDARD OF REVIEW

"Constitutional questions are reviewed *de novo*." *State v. Kelley*, 161 Idaho 686, 689, 390 P.3d 412, 415 (2017) (italics in original). "For constitutional challenges, 'every presumption is in favor of the constitutionality of the statute, and the burden of establishing the unconstitutionality of a statutory provision rests upon the challenger.' " *Zeyen v. Pocatello/Chubbuck Sch. Dist. No.*

---

[3] Burglary is not one of the offenses enumerated in section 20-509 that requires an automatic waiver of jurisdiction by the magistrate court. However, the statute provides that "[a]ll other felonies or misdemeanors charged in the complaint, indictment or information, which are based on the same act or transaction or on one (1) or more acts or transactions as the violent or controlled substances offense shall similarly be charged, arrested and proceeded against as an adult." I.C. § 20-509(1).

[4] Due to his age, Orozco was placed on juvenile probation until his twenty-first birthday. *See* I.C. 20-509(4). Orozco has not appealed his sentence. The only issue presented is the constitutionality of Idaho's automatic waiver statute.

3

*25*, 165 Idaho 690, 694, 451 P.3d 25, 29 (2019) (quoting *Osmunson v. State*, 135 Idaho 292, 294, 17 P.3d 236, 238 (2000)).

### III.   ANALYSIS

The State initially charged Orozco with robbery and burglary, both felonies under Idaho Code section 18-6501 and 18-1401. Although Orozco was a minor at the time of the crime, Idaho Code section 20-509(b) lists robbery among the violent offenses that qualify for automatic transfer to an adult criminal court[5] without an investigation or hearing in the juvenile court.[6] As a result, both of Orozco's charges were adjudicated in district court. Orozco challenges the automatic waiver of jurisdiction by the magistrate court. He sought to have the district court declare section 20-509 unconstitutional. The district court orally denied the motion:

> So generally . . . the party challenging the statute on a constitutional ground bears the burden of establishing the statute is unconstitutional. There's a presumption of validity in the statutes. The statute in question [has] been addressed in the past in the *State* [*vs.*] *Jensen*—that's the Court of Appeals 2016 case—and the *Anderson* case.[7] That's an earlier case, 1985. Neither of those cases have been overruled. They're still good law. I'm going to follow the findings in those cases and deny the motion.

On appeal, Orozco initially argues that Idaho's automatic waiver statute violates due process because a juvenile has a "liberty interest in the individualized treatment available in juvenile court."[8] Orozco next argues that because he has a liberty interest in being treated as a juvenile, Idaho Code section 20-509 does not afford him the process that is constitutionally due before depriving him of that liberty interest. In response, the State asserts that because Orozco has no statutory or constitutional right to be treated as a juvenile, due process protections are inapplicable.

### A. The district court did not err in upholding the constitutionality of Idaho Code section 20-509.

---

[5] Idaho Code section 20-509 refers to "adult criminal proceedings," and Idaho Code section 20-508 refers to "juvenile corrections act proceeding[s]." *See* I.C. §§ 20-508–509. As used in these statutes, the term "adult criminal proceeding" is synonymous with "district court," and the term "juvenile corrections act proceeding" is synonymous with "magistrate court."

[6] In contrast, Idaho Code section 20-508, which applies to juveniles charged with crimes not enumerated in Section 20-509, allows for a juvenile to be waived into adult court only after a "full investigation and hearing." I.C. § 20-508(1).

[7] *State v. Jensen*, 161 Idaho 243, 385 P.3d 5 (Ct. App. 2016); *State v. Anderson*, 108 Idaho 454, 700 P.2d 76 (Ct. App. 1985)

[8] Orozco has not asserted a due process challenge under Idaho's Constitution. Consequently, our analysis is limited to whether Orozco has sustained a violation of his due process rights under the United States Constitution's Due Process Clause.

"It is fundamental to our legal system that the State shall not deprive 'any person of life, liberty, or property, without due process of law.'" *State v. Rogers*, 144 Idaho 738, 740, 170 P.3d 881, 883 (2007) (citing U.S. CONST. amend. XIV, § 1). "'To determine whether an individual's due process rights under the Fourteenth Amendment have been violated, courts must engage in a two-step analysis. The Court must first decide whether the individual's threatened interest is a liberty or property interest under the Fourteenth Amendment.' In the second step, the Court 'determines what process is due.'" *Guzman v. Piercy*, 155 Idaho 928, 939, 318 P.3d 918, 929 (2014) (quoting *Bradbury v. Idaho Judicial Council*, 136 Idaho 63, 72–73, 28 P.3d 1006, 1015–16 (2001)); *see also Mathews v. Eldridge*, 424 U.S. 319, 333–35 (1976).

As for the first step, a liberty interest may arise "from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "Whether any procedural protections are due depends on the extent to which an individual will be 'condemned to suffer grievous loss.'" *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) (quoting *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 168 (1951)). Regarding the second step, we have held that "[a]t a minimum, procedural due process is satisfied 'when the defendant is provided with notice and an opportunity to be heard.' Due process is not to be applied rigidly. Rather, due process 'is a flexible concept calling for such procedural protections as are warranted by the particular situation.'" *State v. Roth*, 166 Idaho 281, 458 P.3d 150, 154 (2020) (quoting *Aberdeen-Springfield Canal Co. v. Peiper*, 133 Idaho 82, 91, 982 P.2d 917, 926 (1999) (internal citations omitted).

Orozco argues that he has a protected liberty interest in his status as a juvenile due to the United States Supreme Court's Eighth Amendment jurisprudence recognizing cognitive and developmental characteristics unique to juveniles. Orozco points to several United States Supreme Court cases, including *Roper v. Simmons*, 543 U.S. 551 (2005), *Graham v. Florida*, 560 U.S. 48 (2010), *Miller v. Alabama*, 567 U.S. 460 (2012), and *Montgomery v. Louisiana*, 136 S.Ct. 718 (2016), which prescribe heightened constitutional protections for juveniles.

In *Roper v. Simmons*, the U.S. Supreme Court held that individuals under the age of eighteen at the time of their crime could not be subjected to the death penalty. 543 U.S. at 578. The Court based its decision on the Eighth Amendment's prohibition of cruel and unusual punishment. *Id.* In addition to prohibiting the death penalty for juvenile offenders, the Court also noted

5

three general differences between juveniles under 18 and adults [that] demonstrate that juvenile offenders cannot with reliability be classified among the worst offenders. First, as any parent knows and as the scientific and sociological studies respondent and his *amici* cite tend to confirm, "[a] lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. . . ." The second area of difference is that juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure. . . . The third broad difference is that the character of a juvenile is not as well formed as that of an adult.

*Id.* at 569 (second alteration in original).

In *Graham v. Florida*, the Supreme Court held that juveniles who commit non-homicide crimes cannot be sentenced to life in prison without the possibility of parole, once again relying on the Eighth Amendment and the unique characteristics possessed by juveniles. 560 U.S. at 82. In *Miller v. Alabama*, the Supreme Court expanded its ruling in *Graham*, holding that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for [all] juvenile offenders." 567 U.S. at 479. Finally, in *Montgomery v. Louisiana*, the Court applied *Miller's* "substantive rule of constitutional law" retroactively. 136 S.Ct. at 734.

The series of four U.S. Supreme Court cases Orozco cites focus solely on Eighth Amendment sentencing concerns. However, Orozco also points to *J.D.B. v. North Carolina*, 564 U.S. 261 (2011), to assert that the U.S. Supreme Court has relied on the principles of *Roper* and its progeny to expand other constitutional protections for juveniles. In *J.D.B.*, the Supreme Court held that the age of a suspect "properly informs the *Miranda* custody analysis," relying, in part, on the psychological differences between adults and juveniles, particularly during police interrogation. *Id.* at 265. However, Orozco is not relying on *J.D.B.* in the context of *Miranda* to support a Fifth Amendment challenge to the police interrogation he faced as a fifteen-year-old. Rather, Orozco argues that the expansion of constitutional protections for juveniles seen in *J.D.B.* is analogous to the constitutional protection he urges this Court to adopt here. To that end, Orozco asserts that the *Roper* line of cases should be similarly relied upon here to find a due process liberty interest in one's status as a juvenile.

Orozco acknowledges that the Idaho Court of Appeals has upheld the constitutionality of Idaho Code section 20-509. *See State v. Jensen*, 161 Idaho 243, 385 P.3d 5 (Ct. App. 2016); *State v. Anderson*, 108 Idaho 454, 700 P.2d 76 (Ct. App. 1985). Orozco asserts that *Jensen* and *Anderson* are manifestly wrong in light of the U.S. Supreme Court's Eighth Amendment jurisprudence "recognizing the unique developmental and cognitive characteristics of juveniles." In response,

6

the State asserts that none of the Eighth Amendment decisions by the U.S. Supreme Court concerning juveniles cited by Orozco specifically address "whether a juvenile has a constitutional right to be charged and prosecuted in a state's juvenile justice system[.]" The State further argues that the legislature, in passing the Juvenile Corrections Act ("JCA"), "defin[ed] the scope of the [JCA] to not include certain juveniles who commit certain crimes."

Idaho Code section 20-509 provides that a number of serious offenses—including robbery—preclude a juvenile defendant from claiming the protections of the JCA:

> Any juvenile, age fourteen (14) years to age eighteen (18) years, who is alleged to have committed any of the following crimes or any person under age fourteen (14) years who is alleged to have committed any of the following crimes and, pursuant to section 20-508, Idaho Code, has been ordered by the court to be held for adult criminal proceedings: . . .
>
> (b) Robbery; . . .
>
> shall be charged, arrested and proceeded against by complaint, indictment or information as an adult. All other felonies or misdemeanors charged in the complaint, indictment or information, which are based on the same act or transaction or on one (1) or more acts or transactions as the violent or controlled substances offense shall similarly be charged, arrested and proceeded against as an adult.

I.C. § 20-509(1).

Section 20-509 is part of Idaho's Juvenile Corrections Act (formerly known as the Youth Rehabilitation Act (YRA)). The intent of the Idaho legislature in enacting the JCA is set forth in Idaho Code section 20-501. In addition to protection of the public, the goals of the JCA are to "hold the juvenile offender accountable for his actions, and assist the juvenile offender in developing skills to become a contributing member of a diverse community." I.C. § 20-501. The JCA emphasizes individualized treatment for juvenile offenders so that they may have the opportunity to return to society as productive members of their communities. *See id.*

> Section 20-505 defines the jurisdiction of the juvenile courts. *See* I.C. § 20-505. It provides:
>
> Subject to the prior jurisdiction of the United States, the court shall have exclusive, original jurisdiction over any juvenile and over any adult who was a juvenile at the time of any act, omission or status, in the county in which the juvenile resides, or in the county in which the act, omission or status allegedly took place, in the following cases:
> . . .
>
> (5) This chapter *shall not apply* to the juvenile offenders who are transferred for criminal prosecution as an adult, as provided in this chapter[.]"

7

I.C. § 20-505(5) (referring to sections 20-508 and 20-509) (italics added).

Although the United States Supreme Court has never held that there is a protected liberty interest in being treated as a juvenile in a quasi-criminal[9] proceeding, it has observed that "the waiver of jurisdiction is a 'critically important' action determining vitally important statutory rights of the juvenile." *Kent v. United States*, 383 U.S. 541, 556 (1966). In *Kent*, a juvenile was waived into adult court pursuant to a District of Columbia statute that afforded the court discretion in its determination of a jurisdictional waiver. *Id.* at 553. The language of that statute provided that "the judge may, *after full investigation*, waive jurisdiction . . . ." *Id.* at 547 (italics added). In deciding to waive jurisdiction over the juvenile, the lower court in *Kent* failed to make findings or provide reasons for the waiver, yet recited that "after 'full investigation, I do hereby waive' jurisdiction of petitioner[.]" *Id.* at 546. The Supreme Court disapproved of the procedure followed by the judge, holding: "[T]here is no place in our system of law for reaching a result of such tremendous consequences without ceremony—without hearing, without effective assistance of counsel, without a statement of reasons." *Id.* at 554. The Court held that the juvenile was "*by statute* entitled to certain procedures and benefits as a consequence of his statutory right to the 'exclusive' jurisdiction of the Juvenile Court." *Id.* at 557 (italics added).

While the Idaho Court of Appeals has ruled on the constitutionality of Idaho's automatic waiver provision, this Court has not yet decided the issue. In both *Anderson* and *Jensen*, the defendants unsuccessfully challenged the constitutionality of Idaho Code section 20-509 (formerly section 16-1806A under the YRA). In *Anderson*, decided in 1985, the Court of Appeals held that "by enacting I.C. § 16-1806A, the legislature clearly intended certain violent criminal acts, when committed by minors, should be excluded from YRA [JCA] jurisdiction." *Anderson*, 108 Idaho at 457, 700 P.2d at 79. Therefore, the defendant had "no statutory right to be proceeded against as a minor." *Id.*

More recently, in *Jensen*, a juvenile defendant urged the Court of Appeals to reconsider the constitutionality of section 20-509 in light of developing United States Supreme Court Eighth Amendment case law specific to juveniles. *Jensen*, 161 Idaho at 248, 385 P.3d at 10. Unpersuaded,

---

[9] *See Interest of Doe, No. 47158*, ___ Idaho ___, ___ P.3d ___, 2020 WL 6387101, at *3 (Idaho Nov. 2, 2020) ("[J]juvenile proceedings are quasi-criminal in nature. While JCA proceedings are neither wholly criminal, nor wholly civil, they are clearly more criminal-like than civil-like.")

the Court of Appeals noted that these cases were "not directly on point." *Id.* The court acknowledged the importance of taking into account individual characteristics of juveniles, but noted that an additional safeguard in section 20-509(4), which permits blended sentencing[10] affords appropriate consideration to the individual juvenile. *Id.* at 249, 385 P.3d at 11. The Court of Appeals distinguished *Kent* on the basis that the juvenile there was entitled *by statute* to a full investigation and hearing before a waiver could occur, regardless of the underlying offense charged. *Id.* at 248–49, 385 P.3d at 10–11. The court reasoned that under section 20-509, "Jensen had no statutory right and no expectation, from either legislation or state conduct, that he could be proceeded against as a minor." *Id.* at 249, 385 P.3d at 11. Accordingly, the Court of Appeals held that under Idaho's statutory scheme, "[Jensen] was never entitled to be charged or tried as a juvenile, [therefore] he never had a liberty interest in being placed in the juvenile court system. Without a liberty interest deprivation, the Fourteenth Amendment is not implicated." *Id.* Although not controlling authority, we find the reasoning of the Court of Appeals in *Jensen* and *Anderson* to be sound and persuasive.

Likewise, we find the authority from neighboring jurisdictions that have considered the constitutionality of similar statutory schemes and reached the same conclusion to be persuasive. *See, e.g.*, *State v. Angilau*, 245 P.3d 745, 750–51 (Utah 2011) (holding that Utah's automatic waiver was constitutional and did not create a liberty interest because the defendant "was never entitled to juvenile jurisdiction once he met the criteria in the automatic waiver statute."); *State v. Watkins*, 423 P.3d 830, 834–36 (Wash. 2018) (distinguishing *Kent* by limiting its applicability to "circumstances where a juvenile court has statutory authority to hear a particular case," and noting that Washington's statutory scheme "precludes our juvenile courts from presiding over a particular class of juveniles[,]" i.e., those charged with an enumerated offense); *see also State v. B.T.D.*, 296 So. 3d 343, 354 (Ala. Crim. App. 2019) (holding that "[a]bsent a statutory right to 'exclusive' juvenile court jurisdiction, a child does not have any recognized protectable liberty interest in a

---

[10] "Blended sentencing" refers to the expanded sentencing discretion a district court has in a case, such as this one, where a juvenile is charged as an adult. Idaho Code section 20-509(4) permits the court, "if a finding is made that adult sentencing measures would be inappropriate," to either:

    (a) Sentence the convicted person in accordance with the juvenile sentencing options set forth in this chapter; or

    (b) Sentence the convicted person to the county jail or to the custody of the state board of correction but suspend the sentence pursuant to section 19-2601A, Idaho Code, and commit the defendant to the dual custody of the department of juvenile corrections and the state board of correction.

*Id.*

juvenile adjudication."); *State v. Behl*, 564 N.W.2d 560, 567 (Minn. 1997) (reasoning that "[p]rocedural due process . . . requires no such hearing for *automatic certification* because the juvenile court never had jurisdiction over the juvenile.") (italics in original).

The language of Idaho Code section 20-509 precludes the Juvenile Court from exercising jurisdiction over juveniles charged with an enumerated offense. *See* I.C. § 20-509(1). The statute states that a juvenile charged with any of the listed offenses, here robbery, "shall be charged, arrested and proceeded against by complaint, indictment, or information as an adult." *Id.* As the *Anderson* court stated, "[the defendant's] conduct was excepted from [JCA] jurisdiction at its occurrence; he had no statutory right to be proceeded against as a minor." 108 Idaho at 457, 700 P.2d at 79. Similarly, Orozco's conduct resulting in the robbery charge did not fall under the jurisdiction of the JCA at the time it occurred. The juvenile court was not vested with discretion in determining whether to waive its jurisdiction; rather, it never had jurisdiction over Orozco because his actions amounted to one of the enumerated offenses listed in section 20-509, actions that fall outside the juvenile court's jurisdiction pursuant to section 20-505. *See* I.C. § 20-505(5). Thus, as used in this context, the phrase "to waive jurisdiction" is a legal misnomer; jurisdiction cannot be waived by a court when it was never bestowed.

Likewise, the statutory scheme of the JCA never gave rise to an "expectation" that Orozco could be charged as a minor; by the same token, Orozco did not suffer a "grievous loss" in being charged as an adult.[11] *See Wilkinson*, 545 U.S. at 221; *see also Morrissey*, 408 U.S. at 481. Had Orozco committed any crime not enumerated in section 20-509, he would have had an expectation, a liberty interest, in being charged as a juvenile—an interest that he could not be deprived of without the due process afforded by section 20-508. *See* I.C. § 20-508(1) (requiring an investigation and hearing before waiver). Unlike in *Kent*, where an investigation and hearing was required before a waiver could occur for *all* crimes, Orozco was not entitled to an investigation or hearing before he could be waived into adult court because his conduct fell into one of the enumerated crimes that the legislature exempted from the jurisdiction of the juvenile court. Because Orozco was charged with conduct the legislature exempted from the juvenile court's jurisdiction, he was never subject to the jurisdiction of the juvenile court, and, therefore, he never had a liberty interest in the individualized treatment offered in juvenile court. Since Orozco

---

[11] It is worth noting that being charged as an adult carries with it some significant procedural advantages not afforded in a juvenile court proceeding, such as the right to trial by jury. *See* I.C. § 20-509(1).

possessed no protected liberty interest, the Fourteenth Amendment's due process concerns he raises are inapplicable to this case.

We are unpersuaded by Orozco's argument that the U.S. Supreme Court's Eighth Amendment jurisprudence creates an all-encompassing and protectable liberty interest in one's status as a juvenile. *Roper*, *Graham*, and *Miller* only pertain to the rights of a juvenile during the *sentencing* phase. *See Roper*, 543 U.S. 551; *Graham*, 560 U.S. 48; *Miller*, 567 U.S. 460. They neither explicitly nor implicitly create a protectable liberty interest in being *charged* as a juvenile. Importantly, it should be noted that the juvenile defendants in *Roper* and *Graham*, like Orozco, were charged as adults within their respective state systems. Therefore, these cases recognize that juveniles differ from adults both cognitively and behaviorally for purposes of accountability for their crimes. While this is a significant development in the law, it is a far cry from establishing a protected liberty interest under the Fourteenth Amendment which is applicable during the trial phase.

Additionally, Orozco's reliance on *J.D.B.* is misplaced in the context of his challenge to section 20-509, a jurisdictional statute. Age is an important factor in the *Miranda* custody analysis when a minor is involved. *See J.D.B.*, 564 U.S. at 265; *State v. Doe*, 137 Idaho 519, 523, 50 P.3d 1014, 1018 (2002). However, the additional rights afforded juveniles during custodial interrogation have no correlation with the considerations used to determine a juvenile court's jurisdiction over a particular juvenile. In enacting the JCA, the Idaho Legislature determined the jurisdictional scope of the juvenile court. This legislative determination, codified in sections 20-505 and 20-509, exempted certain categories of juveniles, i.e., those between the age of fourteen and eighteen charged with an enumerated offense. *See* I.C. §§ 20-505, 20-509. As a result, we decline to create a protected liberty interest where the Legislature itself has expressly preempted one.

**B. By treating Orozco crime as a felony, he was held properly accountable for his egregious acts.**

The dissent makes a persuasive case for why Orozco, the youngest of the three juveniles involved in the robbery, is deserving of leniency; however, it goes on to decry the "grievous" consequences he will suffer as a minor having a felony record. More specifically, the dissent suggests that "[a]utomatically stripping Orozco of his status as a juvenile at fifteen years old, without providing him a hearing to determine if he should be waived into adult court, in my opinion, constitutes a 'grievous loss.' " *See Morrissey*, 408 U.S. at 481. We respectfully disagree.

11

First, the record suggests that the consequences Orozco will suffer are not nearly as grievous as they could have been. It should be remembered that the plea agreement generously allowed Orozco to plead guilty to burglary, not robbery—a crime carrying a maximum punishment of life imprisonment. Nevertheless, the burglary charge was predicated on Orozco entering the store with the intent to commit a felony, and it cannot be disputed that the intended felony was robbery. We acknowledge that Orozco's age relative to the co-defendants, lack of a criminal record, and the fact that he was carrying an "air soft gun" were all appropriate factors considered in mitigation at sentencing. Given that the crime of burglary carries a ten-year maximum sentence, the district court clearly recognized these mitigating factors—including Orozco's youth—when it imposed a blended sentence pursuant to section 20-509(4), ordering that judgment be withheld and placing Orozco on probation for six-years. He will remain on juvenile probation until he turns twenty-one years old, at which time he will be transferred to adult felony probation.

While the mitigating factors mentioned here provided a basis for the considerable leniency shown by the district court at sentencing, they simply provide no justification for converting the crime charged from a felony to a juvenile matter by ruling that section 20-509 is unconstitutional. Indeed, robbery is a grievous crime and by its statutory definition is inherently associated with felony conduct: "Robbery is the *felonious* taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." I.C. § 18-6501 (emphasis added). *See also State v. Storey*, 109 Idaho 993, 998, 712 P.2d 694, 699 (Ct. App. 1985) ("Robbery is an exceptionally serious crime, warranting life imprisonment in some instances because it poses a threat to human life and safety.") Regardless of whether Orozco previously had a clean record, was the youngest of the three perpetrators, or was holding a weapon that only appeared to be deadly, none of these factors lessen the terror and enduring psychological harm the victim experienced from being robbed and threatened at gunpoint by masked assailants, the profound societal impact of the crime, and the risk to public safety associated with such conduct. In the end, Orozco was charged as an adult because, as determined by the Idaho Legislature, he committed a grievous act. Such acts, by their very nature, should carry serious consequences.

In sum, the district court did not err when it denied Orozco's motion seeking to declare Idaho Code section 20-509 unconstitutional. Because we hold that no liberty interest is implicated, we do not reach Orozco's second argument regarding what process is constitutionally due.

12

## IV.    CONCLUSION

For the reasons set forth above, we affirm the district court's decision to deny Orozco's motion seeking a declaration that Idaho Code section 20-509 is unconstitutional.

Chief Justice BEVAN, and Justices BURDICK and BRODY **CONCUR.**

STEGNER, J., dissenting.

I respectfully dissent from the majority's conclusion that Idaho Code section 20-509 is constitutional. I would find that section 20-509 is unconstitutional because it deprives a juvenile of the due process right to notice and an opportunity to be heard before being waived out of the juvenile court's jurisdiction. The determination of whether Orozco should be tried in juvenile or adult court is within the province of a disinterested magistrate, and should not be forever foreclosed by the Idaho Legislature.

At the outset, I note that the Idaho Legislature has set forth its stated purposes for the Juvenile Corrections Act (JCA) in Idaho Code section 20-501. That section provides that when a juvenile is under "the purview of the [JCA], the court shall impose a sentence that will protect the community, hold the juvenile offender accountable for his actions, and assist the juvenile offender in developing skills to become a contributing member of a diverse community." I.C. § 20-501. The legislature expands on these fundamental goals by noting that

> the primary purpose of this act is to provide a continuum of programs which emphasize the juvenile offender's accountability for his actions while assisting him in the development of skills necessary to function effectively and positively in the community in a manner consistent with public safety. These services and programs will *individualize treatment and control of the juvenile offender for the benefit of the juvenile offender* and the protection of society.

*Id.* (italics added).

In addition to the individualized treatment and rehabilitative services afforded to juvenile offenders in Idaho, the United States Supreme Court has also explicitly acknowledged the difference in culpability and character between juvenile and adult offenders. In *Roper v. Simmons*, the Supreme Court set forth three distinct traits attributable to juveniles that sets them apart from adult offenders. 543 U.S. 551, 569 (2005). First, "[a] lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young." *Id.* (quoting *Johnson v. Texas*, 509 U.S. 350, 367 (1993)). The second difference noted

by the Court was "that juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure." *Id.* Finally, the "third broad difference is that the character of a juvenile is not as well formed as that of an adult." *Id.*

In discussing these differences, the Court found that "it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed." *Id.* Although *Roper* stands for the proposition that juveniles under the age of eighteen at the time they commit a crime could not be subject to the death penalty, the unique characteristics of juveniles recognized by the Court undoubtedly apply in other contexts. *See, e.g.*, *J.D.B. v. North Carolina*, 564 U.S. 261, 265 (2011) (finding that the age of a suspect can be taken into consideration in the *Miranda v. Arizona* custodial interrogation analysis).

Following *Roper*, the U.S. Supreme Court expanded constitutional protections for juveniles. In *Graham v. Florida*, the Court considered a sentence of life in prison without the possibility of parole for a juvenile offender who had not committed a homicide, ultimately finding such a sentence unconstitutional under the Eighth Amendment. 560 U.S. 48 (2010). The Court explained "this sentence 'means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of [the juvenile], he will remain in prison for the rest of his days.'" *Id.* at 70 (quoting *Naovarath v. State*, 779 P.2d 944, 944 (Nev. 1989) (alteration added)).

Next, in *Miller v. Alabama*, the Court further developed its holdings in *Roper* and *Graham* by concluding that a juvenile convicted of any crime may not be sentenced to life without the possibility of parole. 567 U.S. 460, 479 (2012). *Miller* concerned a sentencing scheme which mandated life in prison without parole for juvenile offenders convicted of certain offenses. *Id.* at 468. The Court criticized the impact of the mandatory sentencing scheme as contravening the basic principles set forth in *Roper* and *Graham*: "youth matters." *Id.* at 482. The mandatory nature of sentencing a juvenile to life in prison without parole essentially renders a juvenile irredeemable while also subjecting him to a longer sentence than adult offenders who may have committed similar crimes. *See id.* at 474–75.

Although it is not the province of this Court to second guess legislative decisions regarding statutory enactments, it is the fundamental duty of this Court to interpret the Constitution and the protections it affords individuals. *See Nate v. Denney*, 166 Idaho 801, 810, 464 P.3d 287, 296 (2017) (quoting *Miles v. Idaho Power Co.*, 116 Idaho 635, 640, 778 P.2d 757, 762 (1989)) ("[I]t

is 'this Court's duty to faithfully interpret our constitution.'"). In the context of due process, the majority notes that "[a]t a minimum, procedural due process is satisfied 'when the defendant is provided with notice and an opportunity to be heard.'" *State v. Roth*, 166 Idaho 281, 285, 458 P.3d 150, 154 (2020) (quoting *Aberdeen-Springfield Canal Co. v. Peiper*, 133 Idaho 82, 91, 982 P.2d 917, 926 (1999) (internal citations omitted). The familiar two-step analysis first asks whether a liberty or property interest is implicated; if so, then "the Court 'determines what process is due.'" *Guzman v. Piercy*, 155 Idaho 928, 939, 318 P.3d 918, 929 (2014) (quoting *Bradbury v. Idaho Judicial Council*, 136 Idaho 63, 72–73, 28 P.3d 1006, 1015–16 (2001)).

The United States Supreme Court, as well as this Court, have found liberty interests both in protecting one's reputation and avoiding the social stigma resulting from being convicted of a crime. In *Vitek v. Jones*, the United States Supreme Court determined that an inmate subject to an involuntary transfer to a mental hospital possessed a liberty interest protected by due process. 445 U.S. 480, 493 (1980). The Court explained that "the stigmatizing consequences of a transfer to a mental hospital for involuntary psychiatric treatment, coupled with the subjection of the prisoner to mandatory behavior modification as a treatment for mental illness, constitute the kind of deprivations of liberty that requires procedural protections." *Id.* at 494.

In *Smith v. State*, this Court held that before an individual may be classified as a "violent sexual predator," (VSP) he must be afforded procedural due process protections. 146 Idaho 822, 840, 203 P.3d 1221, 1239 (2009). In *Smith*, the Sexual Offender Classification Board classified Smith as a VSP without affording him the opportunity to be heard prior to the Board's determination. *Id.* at 825, 203 P.3d at 1224. The Court concluded that the Board's determination violated Smith's right to due process. *Id.* at 829, 203 P.3d at 1228. In discussing the liberty interest implicated, the Court explained,

> "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515, 519 (1971). "[C]ertainly where the State attaches 'a badge of infamy' to the citizen, due process comes into play." *Id.* [] We take it as a given that the label of "violent sexual predator" is a "badge of infamy" that necessitates due process protections.

*Id.* at 827, 203 P.3d at 1226.

Finally, this Court noted that a label which renders someone "dangerous," "changes his legal status, depriving him of a protected liberty interest in reputation." *Id.* at 828, 203 P.3d at 1227

15

(quoting *State v. Briggs*, 199 P.3d 935 (Utah 2008)). These liberty interests recognized by the Supreme Court and this Court are analogous to one's status as a juvenile because they implicate both an offender's reputation and attach "stigmatizing consequences." *See Vitek*, 445 U.S. 494. Orozco undoubtedly has a liberty interest in his status as a juvenile, for losing this status creates a lifetime of stigma—a "badge of infamy"—which deprives him of the treatment and rehabilitation services afforded juvenile offenders, and permanently labels him a convicted felon.

The majority also notes that in the first step procedural due process protections hinge on whether "an individual will be 'condemned to suffer grievous loss.'" *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) (quoting *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 168 (1951)). Automatically stripping Orozco of his status as a juvenile at fifteen years old, without providing him a hearing to determine if he should be waived into adult court, in my opinion, constitutes a "grievous loss."

Criminal punishments—and the purposes behind them—differ for adults and juveniles. For example, the Idaho Legislature's stated purpose for the JCA is to ensure that juvenile offenders can reintegrate into their communities and become productive members of society; the act offers the juvenile services for rehabilitation and to prevent future crime. *See* I.C. § 20-501. By contrast, adult criminal sentencing typically focuses on protection of society, punishment, and deterrence, with much less emphasis on the promise of rehabilitation. Individualized treatment and the development of skills needed to integrate into one's community are especially emphasized in the juvenile justice realm. A loss of these benefits without the opportunity for a hearing runs afoul of basic procedural due process principles.

Classifying Orozco as an adult strips him of his right as a juvenile to rehabilitative treatment and services that would help him reintegrate into his community. *See* I.C. § 20-501. In addition to losing the rights that attach to juvenile offenders, a felony conviction creates a lifetime of stigma for an offender and is especially problematic for a juvenile. I recognize the sentencing judge imposed a withheld judgment. However, under Idaho law, a withheld judgment is nevertheless a conviction. *See United States v. Sharp*, 145 Idaho 403, 407, 179 P.3d 1059, 1063 (2008). In addition, Idaho law does not have a process by which to expunge a conviction. While it is true Orozco may, if he performs flawlessly on probation, seek to have his guilty plea withdrawn and the charge against him dismissed.[1] In the digital age in which we live, such an option is a

---

[1] *See* I.C. § 19-2604.

hollow victory.[2] This is in no way to suggest Orozco should be given a free pass for his behavior. Rather, the question is whether he is entitled to notice and an opportunity to be heard before sustaining a "grievous loss." I believe he has sustained such a loss by being automatically deprived of the opportunity to be treated as a fifteen-year-old in Idaho's judicial system. A felony conviction will likely prevent him from exercising his right to vote before he is even able to register for the first time, to say nothing of the life-long barriers to gainful employment he will undoubtedly face.

As discussed by the majority, Orozco was just fifteen years old at the time of the robbery, acting at the direction of two older juveniles.[3] It should be noted that this was Orozco's first brush with the legal system. He was a good student who participated on his high school's football and wrestling teams. Without downplaying the severity of committing an armed robbery,[4] Orozco should not be faced with being labeled a convicted felon for the rest of his life[5] without first being afforded the opportunity to present these mitigating factors to the juvenile court in an effort to be treated as the juvenile he so obviously is. It should also be noted that the charge Orozco pleaded guilty to, burglary in violation of Idaho Code section 18-1401, would not have resulted in the automatic waiver of the juvenile court's jurisdiction, yet because of the way in which Orozco was charged, the opportunity to proceed in juvenile court was never afforded to him. A felony conviction essentially "means [a] denial of hope; . . . that good behavior [or] character improvement are immaterial. . . ." *See Graham*, 560 U.S. at 70. Classifying Orozco as a felon

---

[2] There are very real and lifelong consequences to Orozco for having been convicted of a felony at fifteen years of age. As noted by Michelle Alexander in *The New Jim Crow*: "[I]t is the 'prison label, not the prison time' that matters most if we are to understand the true scope and impact of mass incarceration. An arrest (even without a conviction) can have serious consequences, and a criminal conviction of any kind—even if probation rather than imprisonment is imposed—can relegate someone to a permanent second-class status. . . . Millions are now subject to legal discrimination and varying forms of control—locked in and locked out—whether or not they find themselves behind bars." MICHELLE ALEXANDER, THE NEW JIM CROW: MASS INCARCERATION IN THE AGE OF COLORBLINDNESS xxvii–xxviii (Tenth Anniversary ed. 2020). The fact that we are referring to the juvenile Orozco by his name and not as a nameless "John Doe" illustrates the point.

[3] The first juvenile to enter the store and threaten the gas station attendant was seventeen years old at the time. The second was sixteen years old. Notably, the Supreme Court defined susceptibility to "peer pressure" as one of the central differences between juveniles and adults. *See Roper*, 543 U.S. at 569.

[4] The only evidence in the record is that Orozco was carrying an airsoft gun (a pellet gun) that was not loaded with a $CO_2$ cartridge and therefore not capable of discharging a pellet.

[5] Although the district court entered a withheld judgment against Orozco, our case law provides that a withheld judgment is equivalent to a conviction. *Sharp*, 145 Idaho at 407, 179 P.3d at 1063. Even though there is a chance for Orozco to ask to have his guilty plea withdrawn and the charges against him dismissed, this could only occur if Orozco were to perform perfectly during his 6-year probation term, that is, without any technical or legal violations. Even if he were to perform perfectly, the notion that an electronic record of the charged conduct would somehow disappear is illusory, as Idaho law does not provide for the expungement of a withheld judgment. In addition, if Orozco had been treated as a juvenile, his name would not be part of this case. Rather, he would have been given anonymity as a "John Doe" defendant.

without so much as a hearing relegates him to a legal system that makes it much more difficult for him to rehabilitate himself. This runs afoul of the United States Supreme Court's pronouncement that "youth matters" and that juveniles are inherently more likely to reform their behavior with age. *See, e.g.*, *Roper*, 543 U.S. at 569; *Graham*, 560 U.S. at 91–92; *Miller*, 567 U.S. at 473.

The majority suggests that this dissent makes a persuasive case for Orozco to be treated with leniency. In this respect, the majority misperceive my point. The purpose of this dissent is not to argue that Orozco should be given leniency, but rather that Orozco should not have been deprived of the process he was due before his case was waived into district court. If a disinterested magistrate had determined that Orozco's case should have been waived into district and he should have been treated as an adult, there would be no need for this dissent. However, that is not what happened. Neuroscience demonstrates—and jurisprudence recognizes—that "youth matters." *Miller v. Alabama*, 567 U.S. 460, 473 (2012). The crux of this realization is that minors should be treated differently than adults. However, Idaho's legislative scheme determines that minors charged with certain crimes should be treated as adults irrespective of the facts surrounding their crime. It is in this regard that the Legislature has exceeded its power and overstepped the Constitution, effectively determining that youth does not matter. This is not to say that Orozco should not have faced consequences for his participation in this crime, but only to point out that legislative policy decisions cannot outweigh the protections afforded by the United States Constitution, here the Fourteenth Amendment's Due Process Clause. Providing Orozco with a hearing—the process due him—before determining whether he should face consequences in adult court appropriately comports with the Fourteenth Amendment.

In order to prevent this "grievous loss," it is my opinion that the process due Orozco should include a "full investigation and hearing" in front of a disinterested magistrate judge before a waiver of juvenile court jurisdiction may occur. *See* I.C. § 20-508. Even if Orozco were subsequently waived from the jurisdiction of the juvenile court and later convicted of a felony, due process requires that he at least be afforded notice and an opportunity to be heard. Therefore, I would hold that Idaho Code section 20-509 is unconstitutional because it violates Orozco's right to due process. As a result, I would vacate the judgment of conviction and remand to the magistrate court for proceedings consistent with Idaho Code section 20-508.