# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 51814-2024

| | |
|---|---|
| In the Interest of: <br> **JANE DOE (2024-29),** <br> **Juvenile Under Eighteen (18) Years.** <br> ------------------------------------------------ <br> **STATE OF IDAHO,** <br><br>    **Plaintiff-Respondent,** <br><br> **v.** <br><br> **JANE DOE (2024-29),** <br><br>    **Juvenile-Appellant.** | **Boise, January 2026 Term** <br><br> **Opinion filed: April 22, 2026** <br><br> **Melanie Gagnepain, Clerk** |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Gerald F. Schroeder, Senior District Judge. Theresa L. Gardunia, Magistrate Judge.

The decision of the district court is <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender, Boise, for Appellant. Andrea W. Reynolds argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. Mark W. Olson argued.

---

ZAHN, Justice.

Jane Doe appeals from her order of disposition for vehicular manslaughter. When Doe was sixteen years old, she killed a motorcyclist while making an illegal U-turn. The magistrate court found Doe guilty of vehicular manslaughter and imposed a sentence of ninety days in detention, with forty-eight days suspended. For the remainder of the sentence, the magistrate court ordered Doe to serve 10 days in detention and complete 250 hours of community service. Additionally, the magistrate court suspended Doe's driver's license for three years, imposed three years of probation, and imposed fees and court costs.

Doe appealed the sentence to the district court. Relevant to this appeal, Doe argued that the magistrate court abused its discretion because the sentence was unreasonable and failed to promote the Juvenile Corrections Act's ("JCA") sentencing goals of accountability, community protection, and competency development. The district court affirmed the sentence after determining that the sentence promoted the goal of accountability.

Doe appeals the district court's decision. She argues that the district court erroneously reviewed Doe's sentence for compliance with adult (rather than juvenile) sentencing standards and that the magistrate court's sentence failed to promote the JCA's sentencing goals. For the reasons discussed below, we affirm the district court's decision.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

When Doe was sixteen years old, she made an illegal U-turn and collided with an oncoming motorcycle. The driver of the motorcycle died from injuries he sustained in the accident. The State filed a petition against Doe, alleging that she committed the crime of vehicular manslaughter and therefore was subject to the provisions of the JCA. Following an evidentiary hearing, the magistrate court found Doe guilty of vehicular manslaughter under Idaho Code section 18-4006(3)(c) and concluded that Doe fell within the purview of the JCA. The magistrate scheduled a sentencing hearing and ordered that a social history report be prepared concerning Doe's "home environment, past history, competency development, prevention or out-of-home placement services provided, and the social, physical and mental condition of the juvenile offender." *See* I.C. § 20-520(1).

Prior to the sentencing hearing, a juvenile probation officer filed the social history report with the magistrate court. The probation officer opined that Doe did not intentionally cause the accident, and despite a struggle with mental health issues, Doe had graduated high school with high honors, maintained employment, and was enrolled in college and scheduled to begin classes within the next month. The probation officer reported that Doe had completed the "Alive at 25" course and a defensive driving course and had no additional legal violations following the accident. The officer further reported that Doe had asked to speak with the deceased's family "to hear from them the hurt she has caused and what they might wish to see from her moving forward." The officer addressed the three goals of juvenile sentencing identified in Idaho Code section 20-520 and recommended that there was no further need for community protection, competency development, or accountability. The officer concluded the report by recommending that the

2

magistrate court order an informal adjustment of the petition, dismiss the petition pursuant to Idaho Code section 20-511 upon payment of a $20 petition fee, and order Doe to engage in mediation with the victim's family "if deemed appropriate."

Attached to the probation officer's report were copies of Doe's certificate of completion for the National Safety Council's "Alive at 25" course, which concerned understanding the risks of distracted driving. Also attached to the report were copies of Doe's certificate of completion for a defensive driving course, her university admissions and scholarship letter, a letter from Doe and letters from Doe's family, family friends, co-workers, teachers, counselors, and pediatrician. The common theme among these letters was an acknowledgement of Doe's good character and strong support system.

The magistrate court also received letters from the victim's sister, niece, and brother. They discussed the impact of the loss of the victim's life. The victim's sister and niece both expressed their desire for Doe to be sentenced to the maximum allowed.

At the sentencing hearing, the magistrate court heard statements from Doe, Doe's friends and family, and the victim's family. The magistrate court also heard a statement from Doe's pediatrician discussing Doe's mental health challenges following the accident, the steps being taken to preserve her mental health, and how proactive and supportive Doe's family had been regarding her health following the accident. The pediatrician stated: "[in] [m]y medical opinion, the risk of any period of juvenile detention is significant, worsening her mental-health symptoms, and that could include anything from anxiety, panic attacks, depression, self-harm, [or] suicidal ideation."

Doe's counsel asked the magistrate court to follow the probation officer's recommendation of an informal disposition with dismissal of the petition upon payment of the petition fee and possible victim-offender mediation. Her counsel's sentencing argument addressed the JCA's sentencing goals of accountability, community protection, and competency development. Presumably with regard to community protection, Doe's counsel asked the magistrate court to consider a shorter period of license suspension because Doe had "a particularly strong claim to being able to continue to drive . . . ." Doe's counsel argued that Doe's competency development was evident in her academic career, personal character, moral character, and work ethic, which were demonstrated in the probation officer's social history report and the letters and statements by her family and friends. Finally, on accountability, her counsel argued that Doe wanted to make

3

amends and suggested that a victim-offender mediation program could be helpful if the victim's family was willing to participate. Doe's counsel asked the magistrate court to not impose detention because "it is simply a place to sit and think about our consequences. [Doe] has been sitting and thinking for most of the year, for the entire time, since August last year."

The State recommended ninety days in detention with forty-five days suspended. For the remaining forty-five days, it recommended one week of detention and that the rest of the time be served doing community service or "whatever the court sees fit." The prosecutor also recommended a one-year license suspension, and one year of supervised probation.

The magistrate court imposed a modified version of the State's recommendation. It admitted Doe to probation for three years and imposed ninety days in detention, with forty-eight days suspended. For the remaining 42 days, the magistrate court ordered Doe to serve 10 days in detention and perform 250 hours of community service. The magistrate court suspended Doe's driver's license for three years, ordered counseling for Doe, and ordered offender/victim mediation at the option of the victim's family. Finally, the magistrate court ordered a $20 petition fee, a probation supervision fee of $30 per month, a $150 community service fee, and a $1,500 public defender reimbursement.

Prior to announcing its sentence, the magistrate court explained the reasons for the sentence:

> This was a careless and completely preventable accident. I know we use the word "accident," but accident here means a failure of judgment, and there was a lot of failure of judgment here. There [were] [s]o many other things that you could have done that day, and you would not be sitting in that seat.

> You could have turned into the Home Depot. You could have made the right turn on Antelope Drive and made an appropriate turn so that you didn't come in contact with traffic coming in the other direction.

> After listening to the trial, it's the court's firm belief that there was no reason for [the victim] to even think that you would pull across the road the way that you did. You were on his right. I think it probably was contrary to everything that you've learned in driver's ed school as well. I cannot think of a single circumstance where what you did that day would have been seen appropriate. And by the way, there were multiple traffic laws that were violated that day.

> Juvenile court takes into accountability that it is a juvenile in front of the court. This would be a different case in adult court. It would be a very different case in a lot of ways, but the court's constrained to the maximum in this case that's associated with the offense, 90 days in detention and up to three years of probation. That's the maximum.

4

Juvenile court's not the weight of accountability. It is accountability, and I think accountability here is required; otherwise the loss is diminished. I have no power to give what probably everybody in this room wants, including [Doe] and her family, but I am hoping that the accountability here brings some peace to you too.

Doe appealed the Decree and Order of Disposition to the district court. Relevant to the issues she now raises on appeal to this Court, Doe argued that the magistrate court abused its discretion because it failed to explain the justifications for each part of the sentence and Doe had demonstrated that she had already accomplished the three goals of sentencing identified in the JCA. Doe argued that juvenile sentencing considerations are different than adult sentencing considerations and that the magistrate court erroneously considered retribution and punishment when fashioning Doe's sentence. Doe argued that "nothing about the [c]ourt's order [was] reasonable," and "[n]o part of it [was] supported by findings that any terms promote accountability, community protection, and competency development."

The district court affirmed the sentence and concluded that the magistrate court acted within its discretion when it fashioned a sentence that emphasized the accountability goal of juvenile sentencing:

> [Doe] killed a motorcyclist after making a serious and unnecessary driving error. None of the conditions imposed is in excess of or beyond the authority of the magistrate making the disposition. To determine if the sentence is excessive it is necessary to find that cumulatively they constitute an abuse of discretion or individually a condition has so little connection to the offense or the needs of rehabilitation to constitute an abuse of discretion.

> [Doe] denied the charge and the case went to trial. The sentencing judge heard the evidence and determined there were no mitigating facts around the accident that would excuse or lessen [Doe]'s responsibility for [the victim's] death. He did nothing wrong. There were apparently no unusual road conditions that contributed to the collision.

> The magistrate emphasized the accountability aspect of the goals of sentencing under the [JCA]. The disposition reflects the idea that the seriousness of the consequences of the offense must be recognized and brought home. Inherent within that approach is the fact that there is no disposition that can be measured against a loss of life. No sentence can redeem that loss. The juvenile has apparently been a good and responsible person in her life outside this death causing event. That does not erase the fact that she was careless in the most tragic and avoidable way. It is clear that she and her family have great concerns about her mental health and well-being. Regardless, the magistrate concluded that accountability, a full recognition and acceptance of responsibility by [Doe], was the most important factor to be emphasized. The disposition reflects that. In some respects the

5

disposition is less than could have been imposed, but it brings home the fact of accountability for careless and deadly conduct.

Doe timely appealed the district court's intermediate appellate decision.

## II.    STANDARDS OF REVIEW

"When an appeal is initially taken to the district court from a decision by a magistrate, any subsequent review will be conducted independent of, but with due regard for, the decision of the district court." *Doe I v. Doe (2024-23)* (*In re Doe II*), 175 Idaho 412, ___, 566 P.3d 409, 418–19 (2025) (quoting *O'Holleran v. O'Holleran*, 171 Idaho 671, 673, 525 P.3d 709, 711 (2023)). However, this Court is "procedurally bound to affirm or reverse the decision of the district court." *Id.* (quoting *O'Holleran*, 171 Idaho at 673, 525 P.3d at 711).

Sentencing decisions are reviewed for an abuse of discretion. *State v. Campbell*, 170 Idaho 232, 239, 509 P.3d 1161, 1168 (2022) (citation omitted). We review a trial court's decision for an abuse of discretion by considering whether the trial court "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it and (4) reached its decision by the exercise of reason." *State v. Jones*, 167 Idaho 353, 358, 470 P.3d 1162, 1167 (2020) (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)). "[A] fundamental requirement in the proper exercise of sentencing discretion is reasonableness." *State v. Charboneau*, 124 Idaho 497, 499, 861 P.2d 67, 69 (1993).

## III.    ANALYSIS

Doe argues that the district court erred by affirming the magistrate court's sentence because (1) the district court reviewed Doe's sentence for compliance with adult sentencing factors rather than the JCA's sentencing goals; and (2) when Doe's sentence is properly reviewed for compliance with juvenile sentencing goals, it is evident that the magistrate court abused its discretion. For reasons discussed below, we hold that the district court properly reviewed Doe's sentence for compliance with the JCA's sentencing goals and did not err when it concluded that the magistrate court acted within its discretion in fashioning Doe's sentence.

### A. The district court reviewed Doe's sentence for compliance with the JCA's sentencing factors.

Doe first argues that the district court erred by reviewing her sentence for compliance with adult sentencing standards rather than the JCA's sentencing goals. Doe's argument is premised on the fact that the district court, in its intermediate appellate decision, cited to *State v. Toohill*, 103

Idaho 565, 650 P.2d 707 (Ct. App. 1982). *Toohill* is regularly cited by this Court and the Idaho Court of Appeals for its discussion of adult sentencing factors.[1] However, a review of the district court's appellate decision reveals that it did not cite *Toohill* for a discussion of the adult sentencing factors, but rather for the standard of review that an appellate court employs when reviewing a trial court's sentence:

> "In deference to the discretionary authority vested in Idaho's trial courts, we will not substitute our view for that of a sentencing judge where reasonable minds might differ. An appellant must show that, under any reasonable view of the facts, his sentence was excessive" in light of the governing criteria. *State v. Toohill*, 103 Idaho 565, 569, 650 P.2d 707, 711 (Ct. App. 1982). "In determining whether a trial court abused its discretion, this Court asks 'whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason'." *State v. Garcia*, 166 Idaho 661, 669, 462 P.3d 1125, 1133 (2020) (quoting *State v. Bodenbach*, 165 Idaho 577, 591, 448 P.3d 1005, 1019 (2019); *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)).

Further, the district court's analysis focused on whether the sentence imposed by the magistrate court complied with the three sentencing goals identified in the JCA. The district court's appellate decision addressed the JCA's sentencing standards and quoted from *State v. Orozco*, 168 Idaho 274, 279, 483 P.3d 331, 336 (2021):

> The intent of the Idaho legislature in enacting the JCA is set forth in Idaho Code section 20-501. In addition to protection of the public, the goals of the JCA are to "hold the juvenile offender accountable for his actions, and assist the juvenile offender in developing skills to become a contributing member of a diverse community." I.C. § 20-501. The JCA emphasizes individualized treatment for juvenile offenders so that they may have the opportunity to return to society as productive members of their communities. *See id.*

The portions of the district court's decision quoted above demonstrate that it recognized that the magistrate court's sentencing discretion was governed by the three goals of juvenile sentencing identified in the JCA. The district court then reviewed the magistrate court's sentence for compliance with those goals and concluded that it acted within its discretion and emphasized the JCA's goal of accountability in fashioning Doe's sentence. The district court applied the correct legal framework when analyzing Doe's sentence.

---

[1] "In contrast to the three sentencing objectives recited by the [American Bar Association], our Supreme Court has articulated four objectives of criminal punishment: (1) protection of society, (2) deterrence of the individual and the public generally, (3) possibility of rehabilitation, and (4) punishment or retribution for wrongdoing." *Toohill*, 103 Idaho at 568, 650 P.2d at 710 (citations omitted).

**B. The district court did not err when it concluded that the magistrate court acted within its discretion in fashioning Doe's sentence.**

Doe next argues that the magistrate court abused its discretion in fashioning her sentence because it did not explain how the sentence would promote the goals of competency development, community protection, or accountability and that the sentence imposed does not, in fact, advance those goals. We hold that the magistrate court sufficiently explained its sentence and that the sentence was consistent with the JCA's sentencing goals.

The previously quoted portions of the sentencing hearing transcript demonstrate that the magistrate court explained that it fashioned the sentence imposed to promote the JCA's goal of accountability: "It is accountability, and I think accountability here is required; otherwise, the loss is diminished." The magistrate court thus adequately explained how its sentence advanced the JCA's sentencing goals.

Doe argues that her sentence did not actually advance the JCA's sentencing goals because, although the magistrate court mentioned the word "accountability," the sentence imposed was retributive and punitive. Doe asserts that "accountability" does not include punishment and retribution. In support of this argument, Doe cites the definition of "accountability" in Black's Law Dictionary: "state or quality of being answerable to somebody for something; responsibility." (Quoting *Accountability*, Black's Law Dictionary (11th ed. 2019).) She also cites Idaho Code section 20-501(3)(c), which states the legislature's intent that the Idaho Department of Juvenile Corrections should "be operated within the framework of . . . hold[ing] juvenile offenders accountable" through means such as victim restitution, community service, and correctional costs. Doe maintains that these sources demonstrate that punishment and retribution are not part of the JCA's goal of accountability.

Doe further argues that she presented sufficient evidence to the magistrate court to establish that she had already taken accountability for her actions. Doe asserts that she "took responsibility for her conduct from the beginning when she called for help and apologized repeatedly to the police at the scene, and remained answerable for her conduct as the case progressed." Because Doe demonstrated that she had already taken accountability for her actions, she argues that the magistrate court's sentence did not promote accountability and was therefore an abuse of discretion.

Nothing in the JCA indicates that the sentencing goal of accountability is as narrow as Doe suggests. This Court freely reviews questions of statutory interpretation. *State v. Doe (2012-10)*,

156 Idaho 243, 245, 322 P.3d 976, 978 (2014). "The objective of statutory interpretation is to derive the intent of the legislative body that adopted the act." *State v. Hoover*, 175 Idaho 215, ___, 564 P.3d 371, 375 (2025) (quoting *State v. Dunlap*, 155 Idaho 345, 361–62, 313 P.3d 1, 17–18 (2013)). Statutes must be interpreted as a whole, and statutory interpretation begins with the plain and ordinary meaning of the words in the statue. *Id.* If the statute is not ambiguous, this Court does not need to engage in statutory interpretation and should follow the law as written. *Id.*

The JCA directs courts "to determine the sentence that will promote accountability, competency development and community protection." I.C. § 20-520(1). The JCA does not define the term "accountability." However, after directing courts to craft a sentence that promotes three specific goals, it provides a list of available sentencing options:

- Informal adjustment of the petition for a period not to exceed three years, which can include reprimand of the juvenile offender, probation, community service, and restitution to the victim. I.C. § 20-520(1)(a).

- Formal probation for a period not to exceed three years. I.C. § 20-520(1)(b).

- Detention for a period not to exceed thirty days "for each act, omission, or status that is prohibited by the federal, state, local, or municipal law or ordinance by reason of minority only." I.C. § 20-520(1)(c).

- Detention for a period of time not to exceed ninety days "for each unlawful or criminal act the juvenile offender is found to have committed or if the unlawful or criminal act would be a misdemeanor if committed by an adult[.]" I.C. § 20-520(1)(d).

- Detention for a period not to exceed 180 days for each unlawful or criminal act the juvenile offender is found to have committed that would be a felony if committed by an adult. I.C. § 20-520(1)(e).

- Detention and suspension of the sentence on "specific probationary conditions." I.C. § 20-520(1)(g).

- Suspension or restriction of "the juvenile offender's driving privileges for such periods of time as the court deems necessary, and the court may take possession of the juvenile offender's driver's license." I.C. § 20-520(1)(h).

- Examination or treatment by a physician, surgeon, psychiatrist, or psychologist, submission to an alcohol or drug evaluation, if needed, and placement in a hospital or other suitable facility. I.C. § 20-520(1)(i).

- Completion of a comprehensive substance abuse assessment and treatment for substance abuse in keeping with a plan of treatment approved by the court. I.C. § 20-520(1)(j).

- Entry of an order setting forth reasonable conditions to be complied with by the parents, the juvenile offender, or others, including restrictions on visitation by one or both parents, on the juvenile offender's associates, occupation and other activities, and other requirements to be observed by the parents, guardian or custodian. I.C. § 20-520(1)(k).

- Entry of "any other reasonable order that is in the best interest of the juvenile offender or is required for the protection of the public," which order "may combine several of the above-listed modes of disposition where they are compatible[.]" I.C. § 20-520(1)(*l*).

- Entry of an order for "such other terms, conditions, care or treatment as appear to the court will best serve the interests of the juvenile offender and the community[.]" I.C. § 20-520(1)(p).

- Committing "the juvenile offender to the legal custody of the department of juvenile corrections for an indeterminate period of time . . . ." I.C. § 20-520(1)(t).

The JCA also mandates that, where the court has found a juvenile offender is within the purview of the JCA, the court must assess the following fees against the juvenile offender: a twenty-dollar ($20.00) fee for the petition, a fee of sixty cents (60¢) per hour of community service, and it may assess a monthly probation supervision fee. I.C. § 20-520(1)(q), (r), (s).

Nothing in the JCA indicates or otherwise suggests that only some of these options are available to promote accountability. Instead, the variety of sentencing options identified in the JCA and the statutory language authorizing the court to sentence the juvenile "as follows" indicates that the magistrate court has broad discretion when fashioning a sentence that promotes the goals of accountability, competency development, and community protection. Specifically with regard to detention, the magistrate court has authority to impose a longer period of detention for a more serious crime. *Compare* I.C. § 20-520(1)(c) (permitting a period of detention for up to 30 days for status offenses), *with* I.C. § 20-520(1)(d) (permitting a period of detention for up to 90 days for misdemeanor offenses), *and* I.C. § 20-520(1)(e) (permitting a period of detention for up to 180 days for felony offenses). Nothing in the detention sections indicates that detention is only available to promote the goals of community protection or competency development.

Further, nothing in the JCA indicates that the magistrate court was not permitted to consider the severity of Doe's crime when determining a sentence that would promote accountability.

Rather, the JCA vests magistrate courts with the discretion to impose a sentence that will further the juvenile's sense of accountability based upon the crime the juvenile committed. We agree with the district court's assessment that the magistrate court's sentence "reflects the idea that the seriousness of the consequences of the offense must be recognized and brought home." Here, Doe killed an innocent motorcyclist. The magistrate court explained at the sentencing hearing that its sentence promoted Doe's accountability for causing the death.

Contrary to Doe's argument, there is no indication in the JCA that the only sentencing options appropriate to promote accountability are restitution, community service, and correctional costs. Doe's reliance on Idaho Code section 20-501(3) is inapt because that section sets forth the legislative intent concerning programs provided through the *Department of Juvenile Corrections*. Section 20-501(3)(c) provides that juveniles may be held accountable "*through such means* as victim restitution, community service programs and the sharing of correctional costs." I.C. § 20-501(3)(c) (emphasis added). As such, even if the examples identified in section 20-501(3)(c) stated a legislative intent applicable to sentencing, the options identified in the statute are not the exclusive means available to promote accountability.

While a different magistrate court may have followed the probation officer's recommendation, this magistrate court did not. Relying on the fact that Doe's conduct killed an innocent motorcyclist, the magistrate court explained that it was imposing a sentence to promote accountability and then imposed a sentence was expressly allowed under the JCA. As a result, the magistrate court did not abuse its discretion when sentencing Doe. We therefore affirm the district court's intermediate appellate decision affirming Doe's sentence.

## IV. CONCLUSION

For the foregoing reasons, we affirm.

Chief Justice BEVAN, and Justices BRODY, MOELLER, and MEYER CONCUR.